642 A.2d 1142

**LOWER MERION SCHOOL DISTRICT
and Township of Lower Merion**

v.

**MONTGOMERY COUNTY BOARD OF ASSESSMENT
APPEALS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 1994.

Decided May 6, 1994.

Reargument Denied July 12, 1994.

16

Jonahan J. Bart, for appellant.

Kenneth A. Roos, for appellee Lower Merion School Dist.

John S. Summers, for appellee Tp. of Lower Merion.

Before CRAIG, President Judge, NEWMAN, J., and LORD, Senior Judge.

CRAIG, President Judge.

The Montgomery County Board of Assessment Appeals (board) appeals an order of the Court of Common Pleas of Montgomery County granting a petition for a writ of prohibition, mandamus, or equitable and declarative relief filed by the Lower Merion School District and the Township of Lower Merion (taxing authorities). The order prohibited the board

from proceeding with hearings, consideration, and decisions of any kind in two class action tax assessment appeals cases raising issues relating to alleged illegal spot reassessments.

The board presents the following issues on appeal: 1) whether the trial court properly granted a writ of prohibition, writ of mandamus, injunctive and declaratory relief against the board; 2) whether the trial court properly ordered recusal of the board members based on alleged bias or commingling of functions on the part of the board members; and 3) whether the trial court erred in concluding that the taxing authorities had exhausted their administrative remedies where they filed the petition for a writ of prohibition with the trial court, without first proceeding before the board, based on the assertion that board members are biased and hence disqualified to address the class action tax assessment appeals.

## FACTS

The facts, as found by the trial court and as averred in the pleadings, are as follows. In July of 1992, the Montgomery County Commissioners requested the board to prepare a report on the topic of "spot reassessments" [1] in Montgomery County. The chairman of the board, Bert Goodman, issued several series of reports which concluded that 1) certain properties in the township had been illegally spot reassessed, and 2) those property owners overpaid millions of dollars in property taxes because of spot reassessments.

At the time the reports were issued, the other members of the board were Floriana Bloss and Dennis Sharkey.

On August 15, 1992, Joseph Kaminski, by way of letter, filed an appeal of his residential property assessment with the board. In that letter, Kaminski asserted that, 1) shortly after purchasing his property in 1987, that property was singled out for reassessment, 2) he had appealed the reassessment to the

1. Spot reassessment involves a policy where an assessment administration singles out residents in a community and subjects those residents to different standards of assessment than are used for the rest of the community.

board and the board had denied his appeal, and 3) he was now seeking an immediate roll-back of the tax rate and a repayment of the taxes he had paid thus far, plus interest. On September 18, 1992, Joseph Kaminski and his wife Janet Kaminski filed an amended notice of appeal with the board, in which they requested that the appeal be changed to a class action, and alleged illegal spot reassessment since 1983.

On September 18, 1992, Cory and Gail Ruth also filed a class action on behalf of themselves and other residential homeowners alleging illegal spot reassessment since 1983.

On October 23, 1992, by way of letter, the board notified the parties in both class actions that the board would hold a hearing on the claims on November 16, 1992. By letter dated November 6, 1992, the taxing authorities requested that the board "cease to conduct further proceedings" in the class action cases, contending that the board 1) lacked jurisdiction to award class action relief to the parties, and 2) could not conduct a fair hearing because Goodman, as a member of the board at that time, had issued the reports on spot assessments in the county, and because Floriana Bloss had served as the County Commissioner for a period during which the alleged illegal spot assessment had taken place. (RR. 262a).

By letter dated November 10, 1992, the taxing authorities again requested that the board relinquish jurisdiction of the class actions, alleging a conflict of interest because board member Dennis Sharkey was the mayor of Narberth, a local municipality within the Merion School District. (RR. 673a).

On November 10, 1992, The Kaminskis filed a second amended notice of appeal 1) identifying additional class members in the appeal and 2) contending that the alleged illegal spot reassessments began in 1979 and not 1983 as alleged in the first amended notice of appeal. The Ruths also filed an amended notice of appeal on November 10, 1992 identifying additional class members and expanding the period of alleged illegal reassessments to 1979.

On November 13, 1992, the taxing authorities filed a petition for writ of prohibition and a request for a temporary restrain-

ing order with the trial court. On that date, the trial court issued a temporary restraining order directing that the board stay all proceedings in the Kaminski and Ruth class actions pending disposition of the petition by the trial court. On December 9 and 15, 1992, the trial court conducted evidentiary hearings on the petition. The taxing authorities filed a motion to amend the petition, requesting additional relief in the form of a writ of mandamus, equitable and declaratory relief, and such other relief as the court deemed just.

The trial court granted the motion to amend the petition as well as the relief sought in the amended petition. In an order dated March 11, 1993, the trial court 1) enjoined and prohibited the board from conducting any proceedings in the class actions, based on its conclusion that (a) the board lacked jurisdiction and (b) there existed a commingling of prosecutorial and adjudicative functions on the part of the members of the board, and 2) directed the parties in both class actions to file their assessment appeals with the trial court. The board appealed the trial court's order to this court.

## ANALYSIS

### 1. The Nature of the Trial Court's Order

The board argues that the trial court's March 11, 1993 order purports to issue a writ of prohibition and is *not* an order granting injunctive, or declaratory relief, or relief in the nature of mandamus, and that the trial court does not have the authority to issue such a writ of prohibition.

The taxing authorities contend that the March 11 order was not simply a writ of prohibition, but reflected the trial court's granting of the taxing authorities' amended petition for mandamus, injunctive, and declaratory relief as well.

The March 11, 1993 order states in relevant part:

1. The Amended Petition seeking a Writ of Prohibition, a Writ of Mandamus and Equitable and Declarative Relief described below is hereby Granted and said Writs and injunction are hereby entered as described below;

2. The Montgomery County Board of Assessment Appeals (the "Board") is *enjoined, restrained and prohibited* from, and *mandated not to* proceed with hearings, consideration and decision of any kind in the matters captioned (1) In re: Appeal of Joseph C. and Janet M. Kaminski, Philip H. and Francis G. Bradley and (2) In re: Appeal of Cory and Gail Ruth, Michael and Deborah Harris, John and Catherine Kessock because of the appearance of partiality, bias and commingling of functions *and* because the board has no *jurisdiction* to hear appeals of assessments for 1993 or any years previous since those putative class actions were first filed on September 18, 1992.... (Emphasis added.)

(RR. p. 285a–286a).

The trial court, in its opinion denying the board's appeal from its March 11 order, noted that its March 11 order did not explicitly issue a writ of prohibition. The court further noted:

The Order was filed with the intention of *preventing* the Board from hearing the appeals, whatever it may be called. (Emphasis added.)

(RR. p. 293a)

The "writ of prohibition" is an ancient common law writ through which a higher court exercises superintendence over an inferior judicial tribunal by prohibiting that tribunal from exercising jurisdiction over matters which the tribunal does not legally have jurisdiction over, where such exercise of jurisdiction by the inferior tribunal would result in damage and injustice. *Carpentertown Coal & Coke Company v. Laird,* 360 Pa. 94, 61 A.2d 426 (1948).

A writ of prohibition is the exact counterpart of a writ of mandamus. A writ of mandamus is an extraordinary common law writ through which a court of competent jurisdiction *compels* a public official, board, or municipality to perform a mandatory duty or a ministerial act where 1) the plaintiff has a legal right to enforce the performance of that act, 2) the defendant has a corresponding duty to perform the act, and 3) there is no other adequate or appropriate remedy. *Philadelphia Newspapers Inc. v. Jerome,* 478 Pa. 484, 387 A.2d 425

(1978). A court may not use a writ of mandamus to restrain official activities. *Board of Commissioners of Potter County v. Turner,* 33 Pa.Commonwealth Ct. 639, 382 A.2d 1248 (1978).

Because the trial court's March 11, 1993 order "restrained" the activities of the board and did not order the board to perform a ministerial duty, this court must treat the trial court's order as a writ of prohibition.

## 2. The Power of Trial Court to Issue A Writ of Prohibition

█ The board argues that the trial court lacked the power to issue a writ of prohibition.

In *Pennsylvania Labor Relations Board v. Butz,* 411 Pa. 360, 192 A.2d 707 (1963), the Pennsylvania Supreme Court noted that constitutions and statutes in Pennsylvania since 1972, have made certain writs, i.e. writs of certiorari, mandamus and quo warranto, available to the Court of Common Pleas.

The Supreme Court also noted that:

Our research fails to disclose any authority for the issuance of the writ of prohibition under the chancery powers of the Common Pleas Courts.

. . . . .

To hold that a Court of Common Pleas has a common law power to issue the writ would lead in logic to the absurd result that such a court could challenge the jurisdiction of this court to hear an appeal taken from Common Pleas. *Id.*

In *Butz,* and later in *Bethlehem Mines Corporation v. Commonwealth,* 462 Pa. 207, 340 A.2d 435 (1975), the Pennsylvania Supreme Court held that the Superior and Commonwealth Courts, respectively, are authorized to issue writs of prohibition in certain circumstances.

The court in *Bethlehem Mines* noted that, under *Akron Borough v. Pennsylvania Public Utility Commission,* 453 Pa. 554, 310 A.2d 271 (1973), *Carbon County v. Leibensperger,* 439

Pa. 138, 266 A.2d 632 (1970) and *Butz,* a court may only issue a writ of prohibition if the legislature had given it statutory authority to do so. The Supreme Court in *Bethlehem Mines* concluded that § 8(g) of the Commonwealth Court Act, Act of January 6, 1970, P.L. 434, 17 P.S. § 211.8(g) provides this court with the statutory authority to issue writs of prohibition.

Section 8(g) states in relevant part:

The court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of the jurisdiction given by this act. . . .

The Supreme Court reasoned that, because 1) this court has jurisdiction to hear appeals from the Environmental Hearing Board, the tribunal against which the writ of prohibition was sought in that case, and 2) this court is authorized, under § 8(g) to issue *every lawful writ* needed to exercise its jurisdiction, this court was authorized by statute to issue a writ of prohibition in that case.

Under 42 Pa.C.S. § 912, which the legislature adopted after *Butz,* and which enumerates the trial court's power to issue writs:

Every court of common pleas shall have power to issue, under its judicial seal, *every lawful writ* and process to or to be served or enforced by system and related personnel as such court have been heretofore authorized by law or usage to issue. (Emphasis added.)

Section 912 is patterned after § 8(g) of the Commonwealth Court Act. Thus, like § 8(g) above, § 912 empowers the trial court to issue "every lawful writ." In addition, the trial court has jurisdiction to hear appeals from the Montgomery County Board of Assessment Appeals. 72 Pa.S.A. § 5350.

Thus, under the reasoning of *Bethlehem Mines,* in this case, because the trial court 1) has jurisdiction over appeals from the board, and 2) is authorized under § 912 to issue "every lawful writ," the trial court has the authority to issue a writ of prohibition in cases involving the board.

### *3. Granting of the Writ in This Case*

A court may not grant a writ of prohibition 1) unless there is an extreme necessity for the relief requested to secure order and regularity in judicial proceedings and 2) where a complete and effective remedy through appeal, certiorari, writ of error, injunction, or any other remedy exists. *Carpentertown Coal & Coke*, 360 Pa. at 102, 61 A.2d at 430.

The taxing authorities contend that the 1) the *Kaminski* and *Ruth* appeals were untimely, thus arguably divesting the board of jurisdiction over the appeals, and 2) members of the board were biased and could not render a fair adjudication of the appeals, and that those two factors satisfy the "extreme necessity" requirement for the issuance of a writ of prohibition.

In addition, the taxing authorities further contend that no adequate remedy at law exists, because, if the board does not have jurisdiction to hear an appeal, the next step in the appellate review process would lie with the trial court, which was the course taken in this case.

### *a. Timeliness of the Appeals*

Under the Third Class County Assessment Law, the board must complete tax assessments by August 15 of each year. 72 Pa.S. § 5347. Under 72 Pa.S. § 5349(c), which governs the time for filing tax assessment appeals with the board:

> Any person aggrieved by any assessment, whether or not the value thereof shall have been changed since the preceding annual assessment, or any taxing district having an interest therein, may appeal to the board for relief. Any person or such taxing district desiring to make an appeal shall, *on or before the first day of September,* file with the board an appeal.... (Emphasis added.)

Under 72 Pa.S. § 5349(c)(2), the board has jurisdiction to hear class actions in tax assessment cases:

> For the purpose of assessment appeals under this act, the term "person" shall included, in addition to that provided by law, a group of *two or more persons* acting on behalf of a

class of persons similarly situated with regard to assessment. (Emphasis added.)

Furthermore, if one member of a putative class files a timely appeal with the board in a tax assessment case, the entire class benefits from that timeliness. *Garret v. Bamford*, 582 F.2d 810 (3d Cir.1978).

A party may appeal the board's final decision in a tax assessment appeal case to the Common Pleas Court, and that court may then proceed de novo. 72 Pa.S. § 5350.

■ The parties agree in this case that on August 15, 1992, Joseph Kaminski filed an appeal of his residential property assessment with the board. Thus, that appeal was filed before September 1, and was therefore timely under § 5349(c). The trial court concluded that because the Kaminski and Ruth *class actions* were filed on September 18, 1992, the class actions were untimely; however, in accordance with *Garret*, because one member of the class filed an appeal with the board before September 1, 1992, the class actions were timely.

### b. Bias on the Part of the Board Members

■ The board first argues that the trial court lacked the power to order the recusal of board members Bloss and Sharkey under the Pennsylvania Code of Judicial Conduct, on the basis that those members are biased.

However, this court notes that the trial court did not *order* recusal of the board members but merely noted in its opinion, that Canons 2 and 3(C) of the Pennsylvania Code of Judicial Conduct require judges who appear to be biased on certain issues to recuse themselves from the adjudicating cases involving those issues.

The trial court, in granting the taxing authorities' writ of prohibition, merely issued the writ on the basis that 1) the assessment appeals were untimely, and 2) there would have been an appearance of bias and commingling of functions on the part of the board if the tax assessment appeals had been adjudicated by board members Bloss and Sharkey, who were members of the board when Chairman Goodman had issued

the series of reports which concluded that certain properties in the township had been illegally spot reassessed. *See Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992).

Thus, the trial court, in order to determine whether the criteria for issuing a writ of prohibition had been satisfied in this case, i.e., whether there was an extreme necessity for the writ and whether there was another available remedy, had the authority to address the issue of the commingling of prosecutorial and adjudicative functions on the part of the board members, which could have presented the appearance of bias on the part of the board members.

The board further contends that the trial court erred in concluding that the board could not hear the appeals because of the appearance of bias on the part of the board members.

In *Lyness,* the Pennsylvania Supreme Court concluded that the State Board of Medicine violated a physician's due process rights where the board commingled prosecutorial and adjudicative functions by having members of the board who had participated in the prosecutorial stage of the proceedings, also participate in adjudicating the case against the physician.

This court has held, in cases interpreting the *Lyness* decision, that the board may satisfy the *Lyness* requirement of a separation of prosecutorial and adjudicative functions in a board by having members of the board who did not participate in the prosecutorial stage of the proceedings, render the final adjudication in the case. *See Cooper v. State Board of Medicine,* 154 Pa.Commonwealth Ct. 234, 623 A.2d 433 (1993).

In this case, Bert Goodman, who was the chairman of the board at that time, issued several reports concluding that certain properties in the township had been illegally spot reassessed. Goodman later recused himself from participating in any of the tax assessment appeals proceedings. Board members Bloss and Sharkey, although members of the board at the time that Goodman issued the reports, took no part in the preparation of the reports. (R.R. p. 97a) Thus, under a *Lyness* analysis, it cannot be said that those two board

members took part in the prosecutorial stages of the proceedings. In addition, although Goodman prepared the reports alleging that certain properties in the township had been subjected to illegal spot assessment, this does not lead to the conclusion that the other board members had predetermined policies regarding spot assessment and were unable to render a fair adjudication of the tax appeals.

This court concludes that the trial court erred in concluding that there was a commingling of functions on the part of the two board members who would have rendered the final adjudication in the assessment appeals.

## 4. Conclusion

Because this court has concluded that 1) the tax assessment appeals were timely and 2) there is no bias on the part of the two board members, no extreme necessity exists in this case to warrant the granting of a writ of prohibition. Furthermore, an adequate remedy at law exists because the board has jurisdiction to hear the appeals.

Thus, this court concludes that the taxing authorities did not satisfy the necessary requirements to support the granting of the extraordinary remedy of a writ of prohibition.

In addition, where, as in this case, this court has concluded that the board has jurisdiction to hear the appeals, and there is no commingling of prosecutorial and adjudicative functions on the part of the board, the "exhaustion of administrative remedies" doctrine requires that the trial court not exercise jurisdiction where an appeal lies with an administrative agency such as the board. *Interstate Traveller Services, Inc. v. Department of Environmental Resources,* 486 Pa. 536, 406 A.2d 1020 (1979).

Accordingly, the trial court's order prohibiting the board from proceeding with hearings, consideration, and decisions of any kind in the two class action cases, is reversed, and this case is remanded to the board so that board members Floriana Bloss and Dennis Sharkey may adjudicate the tax assessment appeals.

Judge Newman, who constituted a member of the panel quorum which heard argument of this case, has, upon further consideration, resolved to be recused. Therefore, because the two remaining panel judges agree upon the disposition of this case, the same shall be as ordered, in accordance with Pa. R.A.P. 3102(d)(1). *See Bowden v. Workmen's Compensation Appeal Board (G. & W.H. Corson Company),* 31 Pa.Commonwealth Ct. 476, 376 A.2d 1033 (1977).

## ORDER

NOW, May 6, 1994, the decision of the Court of Common Pleas of Montgomery County, dated March 11, 1993, at No. 92–22563, prohibiting the board from proceeding with hearings, consideration, and decisions of any kind in the two class action tax assessment appeals cases, is reversed, and this case is remanded to the board so that board members Floriana Bloss and Dennis Sharkey may adjudicate the tax assessment appeals.

Jurisdiction relinquished.

NEWMAN, J., did not participate in the decision of this case.