**Paul WILDER, Petitioner,**

v.

**DEPARTMENT OF CORRECTIONS,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 9, 1996.
Decided March 13, 1996.

Paul Wilder, Pro Se, as Petitioner.

Clifford D. Swift, III, Assistant Counsel, for Respondent.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

■ Before this court are preliminary objections filed by the Pennsylvania Department of Corrections (Department) to a petition for review filed by Paul Wilder (Petitioner). Petitioner's petition essentially seeks a writ of mandamus to require the Department to reinstate him to his pre-release status.

Petitioner alleges that while serving a term of incarceration at a Philadelphia Community Corrections Center (CCC) on pre-release status, a urinalysis report indicated that he was positive for the use of cocaine. A condition of his pre-release program was to refrain from the possession or use of a controlled substance. On March 24, 1995, a misconduct report was written and the next day he was transferred to the State Correctional Institute (SCI) at Graterford for pre-hearing confinement.

Because the original misconduct report was apparently lost, a new misconduct report was written on April 4, 1995. On Petitioner's request, a disciplinary hearing was held on the misconduct report in which he objected to the rewriting of the misconduct report, the timeliness of the hearing and the admission of the lab report. Petitioner alleged that the report was a false positive due to the fact

that he was taking medication for his heart condition. The Hearing Examiner determined that Petitioner was guilty of the misconduct and Petitioner appealed to a Program Review Committee. On May 12, 1995, the Program Review Committee exonerated Petitioner for the misconduct and directed that an administrative hearing be set to consider his pre-release status.

The CCC Center Director issued a report on May 15, 1995, stating that the staff requested that Petitioner's pre-release status be revoked and set a hearing for May 16, 1995. After the hearing, the Program Review Committee, headed by the Center Director, revoked Petitioner's pre-release status due to concerns that Petitioner's presence at the CCC would constitute a threat to orderly functioning of the facility and a security threat to the community. As a result of the revocation, Petitioner was moved to SCI–Camp Hill. Subsequently, staff members at SCI–Camp Hill refused to support Petitioner's request for parole and it was denied.

Petitioner filed his petition for review contending that the Department's action in revoking his pre-release status and returning him to an SCI violated his due process rights because it reexamined the alleged misconduct for which he had been exonerated and the lab report relied on in the prior misconduct report was hearsay and lacked a proper foundation.[1] The Department filed preliminary objections to the petition for review in the nature of a demurrer.[2] The Department argues that Petitioner has failed to show that its revocation of his pre-release status and returning him to the SCI resulted in a loss of liberty that is protected by the due process clause.

■ Mandamus is an extraordinary remedy through which a court of competent jurisdiction compels a public official, board or municipality to perform a mandatory duty or ministerial act where 1) the petitioner has a

---

1. Petitioner was permitted to amend his petition for review and we address the allegations of the amended petition.

2. The Department also preliminarily objected to this court's jurisdiction alleging defective service.

On our order, service was perfected and by order of November 3, 1995, we overruled that preliminary objection. Petitioner has also filed a motion for summary judgment.

legal right to enforce the performance of that act, 2) the defendant has a corresponding duty to perform the act, and 3) there is no other adequate or appropriate remedy. *Lower Merion School District v. Montgomery County Board of Assessment Appeals,* 164 Pa.Cmwlth. 15, 642 A.2d 1142 (1994). Petitioner contends that he had a liberty interest in his pre-release status, including CCC placement,[3] and that the Department's revocation of his pre-release status violated his due process rights.[4]

▆▆▆ In order to determine whether a constitutional violation has occurred, a determination must initially be made that a protected liberty interest exists and, if so, what process is due. *Hagan v. Tirado,* 896 F.Supp. 990 (C.D.CA.1995). Protected liberty interests may be created by either the Due Process Clause itself or by state law. *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Where a liberty interest is not created by the Due Process Clause itself:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. [citation omitted]. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., *Vitek [v. Jones],* 445 U.S. [480] at 493 [100 S.Ct. 1254, at 1263–64, 63 L.Ed.2d 552] [ (1980) ] (transfer to mental hospital), and *Washington [v. Harper],* 494 U.S. [210] at 221–222 [110 S.Ct. 1028, at 1036–37, 108 L.Ed.2d 178] [ (1990) ] (involuntary administration of psychotropic drugs), nonetheless *imposes atypical and significant hardship on the*
> *inmate in relation to the ordinary incidents of prison life.*

*Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. In *Sandin,* the prisoner, Conner, complained that his segregation in a special holding unit for a disciplinary misconduct that was later expunged violated his due process rights. The Court held that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" because it did not exceed other types of segregated confinement and, due to the restrictions on prisoners outside of confinement at that prison, did not work a major disruption in his environment. *Id.* at ——, 115 S.Ct. at 2301.[5]

▆▆ In *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), which involved transfers from a medium security prison to a maximum security prison, the Supreme Court held that the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. Because the Due Process Clause is not so broad, it does not create a liberty interest in prisoners to be free from intrastate prison transfers. *Id.* at 225, 96 S.Ct. at 2538–39. Moreover, the court stated, such transfers are within the normal limits of custody which the conviction authorizes the state to impose. *Id.*

▆▆ Just as in *Sandin* and *Meachum,* the Due Process Clause does not create a liberty interest in a prisoner's participation in a pre-release program. *Lawson,* 539 A.2d at 72. There is also no state-created liberty interest in the pre-release status that is protected by the Due Process Clause because the revocation is not the type of deprivation of the freedom from restraint required by the

---

3. Petitioner also asserts that numerous due process violations were made by the Department in pre-hearing confinement, in rewriting the misconduct report, and in the proceedings on the misconduct report. However, because Petitioner was exonerated by the Program Review Committee on the misconduct report, all of these allegations were either addressed or were made moot by that decision.

4. Where an inmate files an action in our original jurisdiction seeking review of Department action, our inquiry must be limited to a determination of

whether a constitutional or statutory violation has occurred. *Lawson v. Commonwealth, Department of Corrections,* 114 Pa.Cmwlth. 573, 539 A.2d 69 (1988).

5. In *Sandin,* the Supreme Court abandoned the approach used in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and the cases following it. The Court, in *Hewitt,* had, in the liberty interest inquiry, focused on the language of a particular regulation and not on the nature of the deprivation.

Court in *Sandin. See Hagan,* 896 F.Supp. at 995 (if an inmate placed in disciplinary segregation has no due process right to procedures established in state regulations, a fortiori an inmate placed in administrative segregation has no such due process right). The transfer of a prisoner into an SCI imposes no "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" because an SCI is the place all prisoners ordinarily expect to serve their term, and there was nothing about Petitioner's placement or conditions in SCI–Camp Hill that was different from other residents of SCI–Camp Hill. Moreover, the prison authorities have the right to revoke a prisoner's pre-release status "for administrative or disciplinary reasons".[6] 37 Pa.Code § 94.3(a)(10).[7]

Because Petitioner failed to establish a liberty interest with due process protection, he has no clear legal right to relief and mandamus is unavailable. Accordingly, the Department's preliminary objection is sustained and Petitioner's petition for review is dismissed.

### *ORDER*

AND NOW, this 13th day of March, 1996, the preliminary objection in the nature of a demurrer filed by the Department of Corrections is sustained and Paul Wilder's petition for review is dismissed.

---

**6.** *See also Grayson v. Rison,* 945 F.2d 1064, 1067 (9th Cir.1991), wherein the Court of Appeals stated:

> When prison officials have legitimate administrative authority to move inmates from prison to prison or from cell to cell, the Due Process Clause imposes few restrictions on the use of that authority, regardless of any additional motives that are claimed to exist.... We must allow prison officials the freedom to exercise their administrative authority without judicial oversight. Some administrative actions will inevitably make prisoners feel cheated; nevertheless, this does not give them a federal cause of action.

**7.** Petitioner also argues that all of these actions affected his subsequent request for parole; how-

ever, his only specific allegation is that the staff refused to support his request. There are a myriad of considerations for the grant of parole and Petitioner is given the chance to present his argument. That the staff at SCI–Camp Hill, who were apparently not involved in the misconduct report or revocation of pre-release status, chooses not to support his request does not implicate any due process rights or liberty interests.

Petitioner also mentioned in his petition for review a violation of the "I.C.U. Consent Decree" which is apparently a reference to a Consent Decree entered into as a result of a class action suit filed in federal court by the Imprisoned Citizens Union. As argued by the Department, we can see no basis for jurisdiction in this court to address alleged violations of the Consent Decree.