Robert CRANDELL, Jeannie Fenton, Alma Forsyth, Aaron McIntyre and William J. Sappington, Jr.

v.

PENNSBURY TOWNSHIP BOARD OF SUPERVISORS and Hamorton Association

Appeal of: Pennsbury Township Board of Supervisors

Pennsbury Village Associates, LLC

v.

Board of Supervisors of Pennsbury Township, Appellant

Robert Crandell, Jeannie Fenton, Alma Forsyth, Aaron McIntyre and William J. Sappington, Jr., Appellants

v.

Board of Supervisors of Pennsbury Township, Hamorton Association and Pennsbury Village Associates, LLC.

Commonwealth Court of Pennsylvania.

Argued June 8, 2009.

Decided Aug. 20, 2009.

Gary A. Rosen, Philadelphia and Lawrence E. Wood, West Chester, for designated appellant, Pennsbury Township Board of Supervisors.

Larry Silver, Philadelphia, for appellees, Robert Crandell, Jeannie Fenton, Alma Forsyth, Aaron McIntyre and William J. Sappington, Jr.

Thomas R. Wilson, Berwyn, for appellee, Pennsbury Village Associates, LLC.

BEFORE: COHN JUBELIRER, Judge, FLAHERTY, Senior Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Pennsbury Township Board of Supervisors (Board) and Robert Crandell, Jeannie Fenton (Mrs. Fenton or wife), Alma Forsyth, Aaron McIntyre and William J. Sappington, Jr. (collectively, Citizens) appeal from an order of the Court of Common Pleas of Chester County (trial court) which prohibits Board member Wendell Fenton (Fenton) from participating in any review process, decision and/or approval involving Pennsbury Village Associates, LLC (PVA).[1] We reverse.

This case has a lengthy history and involves land formerly owned by Mr. and Mrs. Layton, which has been identified as

---

1. The Pennsylvania State Association of Township Supervisors has filed a brief of *amicus curiae* in support of the Board.

Parcels A through E. Parcels A (the West Parcel) and C (the East Parcel) are owned by PVA. Parcel B was donated to the Township for use as the site of its municipal building. Parcels D and E were sold to Pennsbury Township (Township) to be used as a community park. The acquisition was partially funded with a grant from Chester County (County) through the County's Open Space Municipal Grant Program. As a condition of obtaining the grant, the Township granted a declaration of covenants, conditions and restrictions on the property. PVA also owns a tract of land known as the Hickory Hill Parcel.

In 2003, the then Board adopted a Traditional Neighborhood Development (TND) as an overlay to the Multiple Use District. The overlay allowed for a village-type development as a conditional use. In 2004, PVA applied for conditional use approval as authorized by the TND ordinance, for a mixed use, high density residential development to be called "Pennsbury Village." PVA sought to build 154 units and 80,000 square feet of commercial space. In addition to its own lands, PVA proposed to use a portion of land owned by the Township. The Board conducted hearings, at which Fenton and Charles Scottoline (Scottoline) appeared and made statements in person or through counsel, objecting to the plan. Fenton's primary objection was that Township property was being used for private purposes. Fenton and his wife also solicited funds to oppose PVA's plans. After concluding the hearings, the Board approved a modified version of the original plan subject to numerous conditions, which prompted appeals by both PVA (# 04–08055) and Citizens (# 04–08070).

Before the appeals could be heard, the issue of the use of the Township land for private development was submitted to the Chester County Orphans Court, which determined that the Township property could not be used as part of PVA's plan. The decision put all parties back at square one. The parties then met in an effort to obtain a resolution.[2] Key to the discussion was how to treat and discharge effluent and placement of access roads. In September of 2005, PVA submitted a revised TND ordinance for consideration.

While the parties continued discussions, Fenton, a republican, ran for the Board on a platform that opposed PVA's proposal and the "as of right" commercial site of PVA's property. Scottoline, a democrat, ran on the same platform. Fenton won the election and took office in January of 2006.

Thereafter, with respect to PVA's plan, the parties entered into a stipulation, which was approved by the trial court on March 8, 2006. Both Fenton and Scottoline participated in the settlement discussions that occurred from October of 2005 through 2006, and resulted in the stipulation.

According to the stipulation, a road required by PVA would pass through park land owned by the Township. In order to implement the stipulation, the Township solicitor wrote to various County officials requesting their cooperation. In April of 2006, the Pennsbury Township Planning Commission (Commission) was asked to recommend placement of the road referenced in the stipulation. Fenton and Scottoline advocated before the Commission that placement of the road be in a location contrary to that envisioned in the stipulation. The Commission approved the "Green Route", the route envisioned in the stipulation. The Board also approved the

2. Fenton and his wife were members of a citizens group known as "Defenders of Pennsbury Township", which opposed PVA's development.

same, with Fenton voting against it. The Green Route encroaches on Township park land which is subject to restrictions.

On May 1, 2006, according to the minutes of a regular meeting of the Board, Fenton stated:

He is not in favor of putting a road into the park that would service a development. He suggested all parties involved might want to revisit the stipulation to consider putting the road in front of the township building close to Route 1.

(Exhibit P-33.)

Thereafter, the County denied the Township's request to use the park land. Fenton then advised fellow Board members of the County's decision and stated that such rendered the stipulation with respect to the road, null and void. Fenton further stated that he was still adamantly opposed to a so-called TND ordinance. In response to a letter written by another Board member, Mary Anna Ralph (Ralph), Fenton contacted the County in writing, seeking the County's opposition to the terms of the stipulation.

On July 13, 2006, PVA sued the County over its refusal to permit use of the park land. PVA also petitioned to enforce or reform the stipulation in light of the County's refusal. Thereafter, PVA, the Township and the County entered into negotiations to resolve their differences and ultimately, an agreement was reached.

Fenton appeared at the Township's Planning Commission meeting on January 30, 2007, and requested that it refuse to ratify the agreement that the parties had agreed to. On that same date, Mrs. Fenton filed suit against the Township to block the agreement between the County and PVA. Fenton reviewed the complaint against the Township on behalf of his wife, a complaint in which he was a named defendant.

Fenton communicated with the Pennsylvania Department of Conservation and Natural Resources (DCNR), requesting that it not agree to use of the park land for PVA's benefit. DCNR indicated that it would not support use of the park land.

In April of 2007, the Board passed an amendment to the Multiple Use District regulation, allowing predominately residential development of tracts less than 15 acres with a density of 6 units per acre (MU amendment). Fenton opposed the MU amendment and voted against it.

In July of 2007, PVA submitted preliminary subdivision and sewage planning modules pursuant to the new MU amendment. In the fall of 2007, the Township's sewer consultants submitted a draft 537 Plan with an exhibit that envisioned the PVA proposed sewer module.

On December 3, 2007, Fenton participated in the Board's review of PVA's plan and spoke in opposition to it, but abstained from voting on the plan. Fenton also stated his intention to refrain from further votes involving PVA. The Board then voted to grant preliminary plan approval to PVA, subject to numerous conditions, including sewage treatment consistent with the Township's updated 537 Plan. Citizens and two other Township residents appealed that approval, which is currently pending.

In December of 2007, Fenton and Board member elect, Scottoline, informed Ralph, a Board member from 2005 through 2007, that Lawrence E. Wood Esq., would be the Township solicitor effective January, 2008. Ralph had not been consulted regarding the appointment. Scottoline officially took office in January of 2008. Fenton and Scottoline also voted to increase the Commission from seven to nine members.

On February 4, 2008, PVA filed a petition for preliminary injunctive relief and

issuance of a writ of prohibition with the trial court, requesting that Board members Fenton and Scottoline be enjoined and prohibited from taking any further action with respect to the plans of PVA. The petition also requested the appointment of a master to act in place of the Board members.

The trial court conducted a hearing and made the above findings of fact.[3] Based on the findings, the trial court determined that Fenton could not act in an unbiased fashion with respect to PVA, but that Scottoline could. The trial court ordered that Fenton be prohibited from participating in any discussions and/or decisions by the Board relating to PVA. Also, the trial court directed the remaining Board members, Karen Wood and Scottoline, along with PVA, to submit a list of five attorneys who were acceptable to them to participate in and vote on any matter pertaining to PVA. The first common name would then be appointed and would have an equal vote with Board members Wood and Scottoline on any matter pertaining to PVA. This appeal followed.[4]

■ We will address the issues out of sequence to those briefed. Initially, we address Citizens argument that they and other electors of the Township have a right to elect their Board members. "[T]he electors of each township shall elect three supervisors...." Section 402 of The Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, as amended, 53 P.S. § 65402. Once codified, this right may not be taken away arbitrarily by the Commonwealth. See Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Here, Citizens argue that the trial court took

away this right to elect their Board members without procedural due process, because the Citizens' participation was not allowed in the hearing that led to Fenton's disqualification.

■ Citizens claim that the trial court erred in ruling that Citizens' counsel could not participate in the hearing that led to the disqualification of Fenton. In court proceedings, parties must be given an opportunity to appear and assert rights if a court wants to enter a binding judgment; Callery v. Blythe Township Municipal Authority, 432 Pa. 307, 243 A.2d 385 (1968). Citizens maintain that their exclusion from participating in the hearing resulted in the disqualification of Fenton.

By prohibiting Citizens from participating, the trial court did not, as alleged by the Citizens, deprive them of their right to elect their supervisors. Fenton remains as a member of the Board. He was not removed from his position but only prohibited from participating and voting on PVA matters. PVA responds that the Citizens lacked standing to participate in the hearing because they did not allege an interest in the outcome that surpassed the common interest of all citizens. Application of Biester, 487 Pa. 438, 409 A.2d 848 (1979). The Citizens must also demonstrate a direct, immediate and substantial interest. Citizens Against Gambling Subsidies, Inc. v. Pennsylvania Gaming Control Board, 591 Pa. 312, 916 A.2d 624 (2007).

Here, the Citizens did not prove an interest in the outcome that surpassed the common interest of all citizens. The Citizens also did not assert how they had a direct, immediate and substantial interest that surpassed the interest of all citizens of

---

3. Counsel for Citizens was not permitted to participate.

4. This appeal presents questions of law, as to which this court's review is plenary and the standard of review is de novo. Buffalo Township v. Jones, 571 Pa. 637, 813 A.2d 659 (2002).

the Township, in not having their elected Board member removed because of bias with respect to PVA's plans.

Before any evidence was taken in this case, the trial court asked the Citizens the basis for their claimed standing. The Citizens claimed that they had standing in that they had an interest in the outcome of the case with regard to the impartiality of two of the Board members and Citizens was a party to another action involving PVA. The Citizens also claimed that they had the ability to assist the court in providing cross-examination. Such claims by the Citizens do not afford them standing.

▮ Next, we address the issue of whether the trial court exceeded its authority in preemptively prohibiting Fenton from participating in any decision related to PVA and thereafter appointing a replacement Board member.

▮ According to the Board, the trial court disqualified Fenton because he is biased against PVA. However, disqualification for bias cannot be based on preconceived views of policy or the law, or even prejudgment of legislative facts. Rather, disqualification may be an appropriate remedy where an adjudicator has "[a] direct pecuniary interest or some other tangible stake in the outcome of a case" and "the interest of the adjudicator in the outcome of the case must be direct, and it must be substantial." *Subaru of America, Inc. v. State Board of Vehicle Manufactur-* *ers, Dealers and Salespersons,* 842 A.2d 1003, 1009–1010 (Pa.Cmwlth.2004).

The Board argues that here, there is no allegation, nor any evidence, that Fenton has any personal or pecuniary interest that conflicts with the plans of PVA. The trial court's finding of bias is based on Fenton's expressed views, which were well known to the voters who elected him, on matters of law and public policy, in particular, regarding the use of adjoining public lands to support development on PVA's property.

▮ Moreover, Section 603 of the Code, 53 P.S. § 65603 provides:

The board of supervisors shall meet for the transaction of business at least once each month at a time and place determined by the board of supervisors. A quorum is two members of a three-member board of supervisors or three members of a five-member board of supervisors. An affirmative vote of a majority of the entire board of supervisors at a public meeting is necessary in order to transact any business. A member of the board shall not be disqualified from voting on any issue before the board solely because the member has previously expressed an opinion in either an official or unofficial capacity.

Thus, Section 603 specifically protects a Board member's right to vote in accordance with campaign promises and other past statements.[5]

---

5. The Board argues that when the Legislature amended Section 603 on April 2, 2002, to add the last sentence, it intended to overrule the case of *Thornbury Township Board of Supervisors v. W.D.D., Inc.,* 119 Pa.Cmwlth. 74, 546 A.2d 744 (1988), wherein according to Senator Greenleaf:

[T]he vote of a commissioner was disallowed because he had previously testified before the zoning board on the same issue. In that case, the commissioner had testified before the zoning board on behalf of con-

stituents who feared a proposed development would increase flooding and sewage problems in their neighborhood. The negating of his vote on the matter resulted in the approval of the proposed development. (*http://www.senatorgre enleaf.com/press–2001/062001–local.html*)

Senator Greenleaf, who authored the amendment to Section 603 went on to explain:

The way the courts have decided, local elected official have the choice of being either gagged or bound. They must submit

PVA responds that a fair hearing in a fair tribunal is a basic requirement of due process. *Christman v. Zoning Hearing Board of the Township of Windsor,* 854 A.2d 629 (Pa.Cmwlth.2004). In analyzing a claim of bias, this court, in *Kuszyk v. Zoning Hearing Board of Amity Township,* 834 A.2d 661, 665 (Pa.Cmwlth.2003), stated the following:

> The Court recognizes that due process requires a local governing body in the performance of its quasi-judicial functions to avoid even the appearance of impropriety.... A showing of actual bias is unnecessary in order to assert a cognizable due process claim; the mere potential for bias or the appearance of non-objectivity may be sufficient to constitute a violation of that right.

PVA argues that this court has held that recusal is warranted when a member of a tribunal participates as an advocate or witness or publicly expresses predisposition. *Thornbury* (board member disqualified after taking advocacy role before the board as a private citizen in opposition to subdivision plan); *McVay v. Zoning Hearing Board of New Bethlehem Borough,* 91 Pa. Cmwlth. 287, 496 A.2d 1328 (1985) (recusal required where a majority of board members, before appointed, signed and filed petitions in opposition to the zoning ordinance at issue) and *Borough of Youngsville,* 69 Pa.Cmwlth. 282, 450 A.2d 1086 (1982) (board member disqualified because he had been employed by the applicant and testified on the applicant's behalf).

PVA relies on *Prin v. Council of Municipality of Monroeville,* 165 Pa.Cmwlth. 519, 645 A.2d 450 (1994), where the developer's application to develop property was denied. On appeal, the developer argued that due process of law was denied because one of the council members, who participated in the vote, had previously authored and distributed inflammatory letters, solicited opposition, made appearances before the zoning hearing board and engaged in vote trading, in an effort to defeat the developer's plans. This court stated that it was clear that the council member was predisposed against the developer and its project and that the council member's "actions in opposition, particularly the letters on official Council stationary, clearly demonstrated his bias and should have precluded him from participating in the Council's vote,...." *Id.* at 452.

Here, PVA argues that as found by the trial court, Fenton's actions far exceeded those of the council member in *Prin.* Prior to being elected to the Board, Fenton formed a group with others to oppose PVA's plans. He also solicited funds, which were sent to his wife, to help defray the cost of opposing PVA's plans. Fenton ran for the Board on a platform opposed to PVA's development. As a Board member, Fenton wrote to the Commission seeking their opposition to the stipulation which had previously been signed by all parties, including Fenton. Fenton also publicly spoke out against PVA's plans at a Commission hearing. Fenton directly contact-

---

to being gagged prior to vote, or they will have their hands tied when the vote occurs. These court decisions are an impediment to representative government. The goal of my legislation is to restore democracy at the local level.
(*http://www.senatorgre enleaf.com/press–2001/062001–local.html* )
We observe that the words of Section 603 are clear. A board member is not precluded from voting on a matter solely because a board member expressed an opinion on a matter either in the official or unofficial status. When the words of a statute are clear, there is no need to look beyond the plain meaning of the statute. *Colville v. Allegheny County Retirement Board,* 592 Pa. 433, 926 A.2d 424 (2007). As such, we need not look to Senator Greenleaf's comments.

ed DCNR to get its support to block PVA's development. He also acted as a consultant to his wife and other Citizens by reviewing the complaint filed by them against PVA and the Township.

We observe, however, that in *Prin* and other cases relied on by PVA, wherein it was determined that an individual should have recused from the voting process, such recusal request was first presented to the allegedly biased individual in an actual proceeding. Instead, PVA has bypassed the voting proceedings by filing suit, in advance, to prohibit Fenton not only from voting, but also from expressing his opinion in Board proceedings involving PVA. During previous proceedings wherein the Board reviewed PVA's draft 537 Plan, Fenton spoke in opposition to it but recused and abstained from voting. Although the Board granted preliminary approval, PVA is now attempting to disqualify him in advance from having any participation in future PVA proceedings despite Fenton then stating his intention to refrain from further votes involving PVA. It would, therefore, appear that since PVA no longer has any reason to fear Fenton's vote that the main thrust

here is to silence his opinions in his public capacity which is contrary to the letter, as well as the spirit, of Section 603 of the Code.

*Prin* is also distinguishable because it was decided before the adoption of Section 603 of the Code.[6]

■ Recusal motions are directed in the first instance to the official whose recusal is sought, for that official's self-assessment. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985). "A trial court judge may decide his own recusal motion in the first instance.... We see no basis for a different rule for a Commissioner acting in his judicial capacity." *Appeal of Blystone*, 144 Pa.Cmwlth. 27, 600 A.2d 672, 674 (1991), *petition for allowance of appeal denied*, 534 Pa. 641, 626 A.2d 1159 (1993). It is only after that official's refusal to recuse, and some substantive action adverse to the movant, that the issue is ripe for review, for abuse of discretion, by another body. *Commonwealth v. Druce*, 577 Pa. 581, 848 A.2d 104, 108–09 (2004).

■ In order to obtain injunctive relief, the petitioner must at least establish

**6.** In the very recent case of *Springwood Development Partners, L.P. v. Board of Supervisors of North Cornwall Township*, 985 A.2d 298 (Pa.Cmwlth.2009), the trial court was reversed for enjoining the Board of Supervisors from considering a Petition For Zoning Map Amendment because the courts have no power to interfere with such legislative action by the Board, e.g., amending the zoning map. This court agreed, however, that the trial court properly enjoined a supervisor from participating in matters involving the developer. That supervisor had not only expressed his opinion opposing the development but was actively involved in a lawsuit against the developer and also admitted to having a pecuniary interest in the outcome of the decisions regarding the development. In addition, although the *Springwood* developer did not request a recusal from the supervisor prior to

seeking equitable relief, it was found that he would not have recused even if requested to do so. In the case *sub judice*, although Fenton had previously voted against legislation submitted by PVA to amend the ordinance and later participated in the Board's review of PVA's preliminary subdivision and sewage plan submitted pursuant to the new amendment to the ordinance, he had already demonstrated his respect for the adjudicative process by abstaining from voting on that plan prior to this court action seeking to enjoin him. Further, Fenton declared at that time that he would refrain from further voting involving only the developer PVA. Fenton also did not have a pecuniary interest as did the supervisor in *Springwood*. We also note that, unlike *Springwood*, there were no adjudicative matters pending before the Board here when injunctive relief was sought.

that the injunction is necessary to prevent immediate and irreparable harm with no adequate remedy at law being available. *Norristown Municipal Waste Authority v. West Norriton Township Municipal Authority,* 705 A.2d 509 (Pa.Cmwlth.1998). Even if PVA's final plan is presented and Fenton refuses to recuse himself, PVA has a right to appeal an adverse decision to the court. Thus, PVA has a remedy at law, i.e. the right to appeal to the courts to have an adverse decision reversed and to have Fenton disqualified at that time. PVA fails to cite, and we have been unable to find any authority for a litigant anticipating bias to launch a pre-emptive strike in the courts to enjoin a public official from voting without first making a request for recusal and receiving a decision adverse to his/her rights.

In *Thornbury,* the developer requested that one of the supervisors recuse himself from voting on the developer's plan because of bias. The supervisor refused and the plan was thereafter approved but with conditions so onerous as to constitute a denial. On appeal, the trial court determined that the supervisor should have recused. On appeal to this court, we affirmed the decision of the trial court vacating the vote of the supervisors and remanding it to the supervisors for a new vote. Here, because there is also an adequate remedy at law, injunctive relief is improper. *Lower Merion School District v. Montgomery County Board of Assessment Appeals,* 164 Pa.Cmwlth. 15, 642 A.2d 1142 (1994), *petition for allowance of appeal denied,* 542 Pa. 652, 666 A.2d 1060 (1995).

PVA, however, relies on *P.J.S. v. Pennsylvania State Ethics Commission,* 669 A.2d 1105 (Pa.Cmwlth.1996), for the proposition that an appeal of the Board's decision would not be an adequate remedy at law because the Board would be acting in an adjudicatory capacity and the scope of review on appeal would be limited to whether the Board committed an error of law or abuse of discretion. In *P.J.S.* a complaint was filed against an attorney before the Ethics Commission. The attorney filed a petition for injunction, claiming the Ethics Commission lacked the power to prosecute him and adjudicate the issues before it. The Ethics Commission answered that the attorney's request for an injunction should be denied because the attorney, should the Ethics Commission rule against him, had an adequate remedy at law, an appeal as of right to a court. In ruling against the Ethics Commission, this court stated that the attorney "in this proceeding is challenging the power of the [Ethics] Commission to prosecute him and to adjudicate the issues before it, and therefore, it is not an adequate remedy to take an appeal from an order of the agency which Petitioner [attorney] contends has no jurisdiction in this matter." *Id* at 1113.

*P.J.S.* is distinguishable, however, because therein, the attorney was questioning the jurisdiction of the Ethics Commission. Such is not the case here.

We also agree with the Board that the trial court erred in ordering a replacement Board member to act in the place of Fenton on matters relating to PVA. Here, the trial court found two of the three members of the Board were qualified to vote on any matter involving PVA. The Township does not act officially by the vote of any individual supervisor but only by a majority vote of a quorum of the Board. Section 603 of the Code. Since this Board was composed of three members, a quorum consists of at least two members being present to vote. *Id.* The Legislature has made it clear in Section 603 of the Code that a local supervisor, duly elected by the citizens, should not be suppressed from participating in

the discussion and/or debate of an issue by denying him thereafter the right to vote on such issue. Public officials are elected without such a restriction on their right to freedom of speech or their lawful duty to their constituency to voice their opinions. The right of a petitioner to due process does not encompass the silencing of an elected supervisor by prohibiting him from expressing opinions or arguments and otherwise participating in the review process, particularly here when Fenton, after so participating and speaking in opposition to the plan, not only abstained from voting on the plan but also stated his intention to refrain from further votes involving PVA.

When a majority of a quorum of the Board votes the same way, the result is the official action of the Township. Section 603 of the Code. Even if disqualification of Fenton had been made at the proper time, there was no need to appoint someone in his place because there still would have been a quorum of two Board members to act on PVA's application in accordance with Section 603 of the Code. The courts should not presume to anticipate a tie vote merely because of the predictable absence or abstention of one of the three supervisors.

In accordance with the above, the decision of the trial court is reversed.

### ORDER

Now, August 20, 2009, the order of the Court of Common Pleas of Chester County, in the above-captioned matter, is reversed.