Joseph C. and Janet M. KAMINSKI, Philip H. and Frances G. Bradley, Corey and Gail Ruth, and Michael R. and Deborah B. Harris, individually and on behalf of all others similarly situated, Appellants

v.

MONTGOMERY COUNTY BOARD OF ASSESSMENT APPEALS,

County of Montgomery, School District of Lower Merion, and Lower Merion Township,

Joseph C. and Janet M. KAMINSKI, Philip H. and Frances G. Bradley, Corey and Gail Ruth, Michael R. and Deborah B. Harris, and John and Catherine Kessock, individually and on behalf of all others similarly situated, Appellants,

v.

MONTGOMERY COUNTY BOARD OF ASSESSMENT APPEALS.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1994.

Decided April 13, 1995.

Michael M. Baylson, for appellants.

Mark A. Aronchick and Kenneth A. Roos, for appellees School Dist. of Lower Merion and Lower Merion Tp.

Before DOYLE and McGINLEY, JJ., and DELLA PORTA, Senior Judge.

McGINLEY, Judge.

Joseph and Janet Kaminski (the Kaminskis), Philip H. and Frances G. Bradley (the Bradleys), Corey and Gail Ruth (the Ruths), and Michael R. and Deborah B. Harris (the Harrises); (collectively, Taxpayers) appeal from orders of the Court of Common Pleas of Montgomery County (common pleas court) which denied Taxpayers' petition requesting assignment of an out-of-county judge (order dated February 22, 1993), Taxpayers' motion to compel discovery (order dated October 18, 1993), an order dismissing Taxpayers' petition to appeal nunc pro tunc (1994 real estate tax) (order dated September 1, 1993), and an order dismissing Taxpayers' petition to appeal nunc pro tunc (order dated January 4, 1994).

## The Reassessments

Taxpayers are all owners of properties located within Montgomery County. Following a county-wide reassessment in 1978, the Montgomery County Board of Assessment Appeals (Board) discovered and sought to remedy two categories of errors in the reassessment. The first category involved certain properties which were inaccurately valued when individual assessors made arithmetical errors, such as miscalculating square footage. The second involved the methodology used to derive fair market value (the Board used 1976 as its base year for fair market value purposes).

The Board did not attempt to correct all the assessment errors at once. Rather, it instituted what it termed the "equalization and maintenance program" immediately after the January 1, 1978, effective date of the reassessment. The goal of the "equalization and maintenance program" was to correct ten percent per year of a list of 44,000 under-assessed properties. The "equalization and maintenance program" was completed in 1983. Thereafter, properties were assessed using a substantially similar program until the practice was terminated in 1990, when new Board chairman, Bert M. Goodman, Esquire (Goodman) terminated the program. On August 21, 1992, Goodman issued a report opining that 131 properties in Lower Merion Township had been "spot assessed"

in violation of Article 8, Section 1 of the Pennsylvania Constitution, which requires uniform taxation. Goodman subsequently issued four supplemental reports opining that 2,052 additional properties had been unlawfully assessed.

### The Notice

The common pleas court opinion notes that since the beginning of the "equalization and maintenance program" the Board has sent timely notices to taxpayers when a property assessment was corrected under the program. The notices identified the dollar amount of the new assessment, the dollar amount of the previous assessment, the applicable market value/assessment value ratio, the market or base year value, the property, the owners of record, the effective date and parcel number. Each notice also informed the property owners of the right to appeal the assessment, as well as the telephone number and office hours of the Board. Further, the common pleas court noted that the *Evening Bulletin,* a local newspaper, published a number of articles both before and after the program was implemented which discussed the policy behind the program. Finally, the common pleas court observed that during the time in question, the Board had an "open door" policy in which assessors were instructed to meet, and in fact routinely met, with taxpayers to explain the reassessments (additionally, the Board's records were open for public inspection).

The Kaminskis received notices from the Board in October of 1987 indicating that the assessment on their property was to be increased from $45,100.00 to $71,200.00. The Kaminskis timely appealed the assessment to the Board which subsequently denied their appeal. The Kaminskis did not appeal to the common pleas court and now allege that they did not do so because they had no knowledge that the Board had done anything improper until they reviewed Goodman's report.

The Bradleys received notices from the Board in 1982 indicating that the assessment on their property was to be increased from $23,800.00 to $31,700.00. The Bradleys did not file an appeal to the Board until, they allege, they learned of the questionable practices in September of 1991.

The Ruths received notices in 1989 that their assessment was to be increased from $34,000.00 to $50,100.00. The Ruths did not appeal the assessment because they allege that they did not learn of any improprieties involving the Board's practices until September of 1992.

The Harrises received notices in 1982 that their assessment was increased from $19,300.00 to $29,400.00. The Harrises allege that they did not appeal the assessment until they obtained knowledge of the Board's practices in September of 1992.

### Procedural History

In August 1992, the Kaminskis appealed their assessment to the Board, alleging that it was an illegal "spot reassessment". On September 18, 1992, an amended class action appeal was filed by Taxpayers on behalf of all residents of Lower Merion Township whose properties had been spot reassessed after the 1978 reassessment.

A hearing was scheduled by the Board to take place on November 16, 1992. By letter dated November 6, 1992, the School District of Lower Merion (School District) and Lower Merion Township (Township) requested that the Board "cease to conduct further proceedings" in the class action cases, alleging that the Board lacked jurisdiction to award class action relief to the parties and that the board members were biased. By letter dated November 10, 1992, the School District and the Township again requested the Board to forego the proceedings, alleging bias on the part of Board member, Dennis Sharkey. On November 13, 1992, the School District and the Township filed a request for a temporary restraining order and a petition for a writ of prohibition, which was subsequently amended to request additional relief in the form of a writ of mandamus, equitable and declaratory relief, and such other relief the court deemed just, with the common pleas court.

The temporary restraining order was granted on that day and later, on May 11, 1993, the common pleas court granted the writ of prohibition concluding that the Board lacked jurisdiction and that there existed a

commingling of prosecutorial and adjudicatory functions on the part of board members. The Board appealed to this court which, in an opinion and order dated May 6, 1994, reversed the decision granting the writ of prohibition reasoning that: 1) since the Kaminskis filed their assessment appeal in a timely fashion, then all other members of the class could be considered timely for purposes of the class action; 2) the Board does have jurisdiction to hear a class action appeal; and 3) there was no commingling of functions on the part of board members. Accordingly, this Court remanded so that the Board could reach a decision on the merits. *Lower Merion School District v. Montgomery County,* 164 Pa. Commonwealth Ct. 15, 642 A.2d 1142 (1994).

In the meantime, on February 8, 1993, Taxpayers filed a petition for appeal *nunc pro tunc* in the common pleas court, as well as a motion for assignment of an out-of-county judge to hear the petition. The County of Montgomery (County), the School District and the Township subsequently intervened. The request for assignment of an out-of-county judge was denied on February 22, 1993. After a discovery period and arguments on the petition for appeal *nunc pro tunc,* the petition was denied by the common pleas court on January 4, 1994. Taxpayers appeal.[1]

### Issues Presented

On appeal, Taxpayers present the following issues: 1) whether the common pleas court properly construed and applied the doctrine of spot reassessment in considering Taxpayers' petition; 2) whether reasonably accessible information existed during the class period from which Taxpayers could have discerned if their properties were unlawfully assessed; 3) whether the common pleas court employed the proper legal standard in determining that Taxpayers could not proceed *nunc pro tunc;* 4) whether the common pleas court committed an error of law by denying the petition based on prejudice to the taxing authorities; 5) whether the common pleas court erred in failing to allow Taxpayers an evidentiary hearing on the petition; 6) whether the trial court erred in failing to appoint an out of county judge to hear the petition; and 7) whether the trial court erred in dismissing Taxpayers' petition for appeal *nunc pro tunc* filed in connection with their 1994 real estate tax assessment appeal.[2]

### The Petition for Appeal *Nunc Pro Tunc*

■ This court's scope of review when examining an appeal from the denial of a petition to appeal *nunc pro tunc* is limited to a determination of whether the common pleas court abused its discretion or committed an error of law. *Connor v. Westmoreland County Board of Assessment Appeal,* 143 Pa. Commonwealth Ct. 86, 598 A.2d 610 (1991).

### Discussion

■ Initially, we note that an appeal nunc pro tunc may be granted "when it is shown that extraordinary circumstances involving fraud or its equivalent, duress, or coercion, have caused delay in the filing of an appeal." *Connor,* at 90, 598 A.2d at 612, (*citing Sewickley Valley Hospital v. Department of Public Welfare,* 121 Pa. Commonwealth Ct. 337, 550 A.2d 1351 (1988), *appeal denied,* 524 Pa. 614, 569 A.2d 1372 (1989); and *Academy Plaza Assoc. v. Board of Revision of Taxes, City of Philadelphia,* 94 Pa. Commonwealth Ct. 517, 503 A.2d 1101 (1986). As a threshold matter, however, a petitioner in an appeal nunc pro tunc must proceed with reasonable diligence once he knows of the necessity to take action. *Commonwealth, Department of Transportation v. Johnson,* 131 Pa. Commonwealth Ct. 51, 569 A.2d 409 (1990). In *Johnson,* we held that the trial court erred in permitting an appeal nunc pro tunc where, absent an allegation that the delay was the

---

1. This Court initially issued an opinion and order in the present case on January 17, 1995. Taxpayers subsequently filed an application for reargument which this Court treated as an application for reargument and an application for reconsideration. In an order dated March 13, 1995, we denied reargument and granted reconsideration. The order of March 13, 1995, also withdrew the previous opinion and order. This opinion follows reconsideration.

2. This Court has foregone the sequence of Taxpayers' arguments.

result of non-negligent happenstance, there was a delay of two months between the time the petitioner engaged an attorney and the time a petition for appeal nunc pro tunc was filed.

■ In the present case, the record reflects that a time period of six months passed between the date that the Kaminskis filed their timely appeal of their 1993 tax assessment with the Board (August 15, 1992) and the date that the Taxpayers filed their petition for appeal nunc pro tunc (February 8, 1993). Taxpayers have not attempted to explain the reason for this lapse in time. Accordingly, Taxpayers have failed to establish a right to appeal nunc pro tunc.

■ Further, Taxpayers request review of an earlier order of the common pleas court which denied their petition to appeal nunc pro tunc in connection with their 1994 real estate tax assessments. That petition was filed on August 31, 1993, and was dismissed by the trial court on September 1, 1993, as being "moot". A comparison of both petitions reveals that the only difference between the two is that the petition filed on August 31, 1993, is an attempt to challenge the 1994 assessments. According to Section 8 of the Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. 5349(c), Taxpayers had until September 1, 1993, to file a *timely* appeal with the Board from their 1994 real estate tax assessments. Accordingly, a nunc pro tunc appeal was unnecessary and improper. Where the Taxpayers could have timely filed an appeal with the Board, the common pleas court did not err in dismissing the petition for appeal nunc pro tunc.

**The Request For an Out of County Judge**

■ Taxpayers also argue that the common pleas court erred in failing to appoint an out of county judge. We disagree. Taxpayers assert that because the common pleas court relies on the County for funding for the County's court system, then a conflict of

interest existed because a potentially large judgment against the County could have affected the court system's budget. We find this argument meritless in light of the well established fact that courts have inherent authority to compel the payment of funds reasonably necessary to their efficient and effective operation. *Lavelle v. Koch,* 532 Pa. 631, 617 A.2d 319 (1992). Additionally, as the present issue is purely a question of law, there was no prejudice to the Taxpayers.

The decision of the common pleas court is affirmed.[3]

### ORDER

AND NOW, to wit, this 13th day of April, 1995, the order of the Court of Common Pleas of Montgomery County at No. 93–03051, and dated January 4, 1994, is affirmed. The motion to supplement the record submitted by Appellants is dismissed.

NEWMAN, J., did not participate in the decision in this case.

---

3. Due to our disposition of Taxpayer's issues regarding the petition for appeal nunc pro tunc, we need not examine the remaining issues raised. Finally, *following oral argument in this matter,* Taxpayers submitted a motion to supplement the record alleging there was newly discov-

ered evidence regarding the County's financial condition. Such evidence pertains to the merits of Taxpayers' appeal and in light of this Court's conclusion that Taxpayers have failed to prove a right to an appeal nunc pro tunc, Taxpayers motion is dismissed.