# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William H. Croft, : 
           Appellant : 
         : 
       v. : No. 116 C.D. 2015
         : Argued: November 17, 2015
Board of Property Assessment, Appeals : 
and Review, Borough of Ben Avon : 
Heights, Avonworth School District, : 
Allegheny County : 

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED: March 8, 2016**

William H. Croft (Taxpayer) appeals the September 3, 2014 order of the Court of Common Pleas of Allegheny County (Trial Court), which denied Taxpayer's appeal from the May 28, 2014 decision of the Board of Property Assessment, Appeals and Review (Board) that determined Taxpayer was not permitted to file a *nunc pro tunc* appeal from tax assessments made by the Borough of Ben Avon Heights, Avonworth School District, and Allegheny County (collectively the Taxing Authorities) pursuant to Second Class County Assessment Law.[2]

The Board concluded that Taxpayer was prohibited from filing an appeal *nunc pro tunc* because Taxpayer "failed to demonstrate the occurrence of an

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[2] Act of June 21, 1939, P.L. 626, *as amended*, 74 P.S. §§ 5452.1-5452.20.

administrative breakdown or fraud, or mental or physical infirmity, and the due diligence required as a basis for granting a late-filed appeal." (Board Decision, Reproduced Record (R.R.) at 152a.) Taxpayer appealed to the Trial Court and a hearing was held on August 21, 2014. (Hearing Transcript (H.T.), R.R. at 78a-150a.) Following the hearing, the Trial Court affirmed the Board and Taxpayer appealed the Trial Court's order to this Court. We conclude that Taxpayer has demonstrated that he was denied his right to timely appeal the tax assessments due to repeated administrative breakdowns that constitute the extraordinary circumstances a *nunc pro tunc* appeal was intended to remedy; therefore, we reverse the order of the Trial Court and remand this matter to the Trial Court with direction to remand to the Board to permit Taxpayer to proceed with a *nunc pro tunc* appeal.[3]

Taxpayer and Helen T. Croft, now deceased, husband and wife, received the Deed for a dwelling known as 11 Oxford Road, Pittsburgh, PA (the Property) in Ben Avon Heights Borough, Allegheny County, from J. Scott Teachout and Elizabeth Novak Teachout, husband and wife, on September 19, 1999, for and in consideration of the sum of $363,000. (Deed, R.R. at 14a.) The

---

[3] A request to appeal *nunc pro tunc* is directed to the trial court's equitable powers. *Darden v. Montgomery County Tax Claim Bureau*, 629 A.2d 321, 323 (Pa. Cmwlth. 1993). This Court's standard of review of a denial of an appeal *nunc pro tunc* is whether the trial court abused its discretion or committed an error of law. *Starwood Airport Realty v. School District of Philadelphia*, 115 A.3d 410, 413 n.6 (Pa. Cmwlth. 2015). Our Supreme Court discussed the proper basis for granting an appeal *nunc pro tunc* in *Union Electric Corp. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 746 A.2d 581 (Pa. 2000), stating that: "[a]llowing an appeal *nunc pro tunc* is a recognized exception to the general rule prohibiting the extension of an appeal deadline. This Court has emphasized that the principle emerges that an appeal *nunc pro tunc* is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." *Id*. at 584 (internal citations omitted); *see also Radhames v. Tax Review Board*, 994 A.2d 1170, 1175 (Pa. Cmwlth. 2010); *Hanoverian, Inc. v. Lehigh County Board of Assessment*, 701 A.2d 288, 289 (Pa. Cmwlth. 1997).

2

Deed and the Little Plan of Lots designates the Property as Block and Lot No. 214-C-89 (No. 89) and Block and Lot No. 214-C-88 (No. 88). (*Id*.; Little Plan of Lots, R.R. at 13a.) No. 89 is an L-shaped lot containing the bulk of Taxpayer's house and garage. (Real Estate Map, R.R. at 34a.) No. 88 is a rectangular lot that includes part of the house and part of the garage, and begins at the front of the house and extends to the back of the Property. (*Id*.) The Deed was recorded by the Allegheny County Department of Records on September 30, 1999. (Deed, R.R. at 14a.) Following receipt of the Deed, Taxpayer did not examine the Deed, instead merely filing it away in his personal papers. (H.T. at 17, 31, R.R. at 94a, 108a.)

When the Deed was processed in 1999, No. 89 was transferred to Taxpayer and his wife by the Real Estate Department of Allegheny County, but No. 88 was not transferred. (Emails between Amy Yanke, Mapping Supervisor for Allegheny County, and Taxpayer, R.R. at 64a-65a.) Taxpayer paid taxes on No. 89 beginning with the purchase of the Property. (H.T. at 19, R.R. at 96a.) Taxpayer did not pay taxes on No. 88. (No. 88 Jordan Tax Service Liens, R.R. at 17a; H.T. at 19, R.R. at 96a.) At the time of purchase, Taxpayer escrowed his taxes with the bank providing his mortgage; currently the mortgage is held by and the taxes are escrowed with Northwest Savings. (H.T. at 18, 44, R.R. at 95a, 121a.) Neither Taxpayer nor his bank received notice of taxes owed for No. 88 or assessments for No. 88 from 1999 through 2013. (H.T. at 19, R.R. at 96a.)

From the time of purchase in tax year 1999 until 2013, No. 88 remained in the name of J. Scott Teachout and Elizabeth Novak Teachout, husband and wife. (No. 88 Jordan Tax Service Liens, R.R. at 17a; H.T. at 23-27, R.R. at 100a-104a; Emails between Amy Yanke, Mapping Supervisor for Allegheny County, and Taxpayer, R.R. at 64a-65a.) Notices were mailed to J. Scott Teachout

3

and Elizabeth Novak Teachout at 13 Oxford Road, Pittsburgh, PA 15202, a nonexistent address. (Tax Receivable Inquiries, R.R. at 19a-21a; Oxford Road Address List, R.R. at 22a; H.T. at 23-27, R.R. at 100a-104a.) While it is unclear in the record why or how, in 2003 J. Scott Teachout and Elizabeth Novak Teachout received a partial exoneration of the tax lien against No. 88 and at that time, their address was listed as 4242 North Harlem Avenue, Noridge, Illinois. (H.T. at 25-26, R.R. at 102a-103a.) In 2006, the Avonworth School District attempted to file a judgment against J. Scott Teachout and Elizabeth Novak Teachout for unpaid taxes on No. 88, however, the Sheriff was unable to perfect service and noted that there was no such address as 13 Oxford Road, Pittsburgh, PA. (H.T. at 26-27, R.R. at 103a-104a.)

In 2005, Taxpayer applied for and received a building permit to expand the utility shed located in the back of the Property. (Application for Variance, 59a-52a, R.R. at 49a-52a; H.T. at 34-37, 111a-114a.) Although the zoning process included a survey of the Property showing two separate lots, neither the Zoning Board of Adjustment nor Taxpayer became aware that the shed was constructed on two lots, and that No. 88 had multiple liens filed against it. (*Id.*) In 2012, Taxpayer received an assessment changing the value of No. 89 from $360,000 to $450,900. (H.T. at 28, R.R. at 105a.) Taxpayer hired an attorney, Mr. Biernicki, and filed a tax assessment appeal in 2012. (H.T. at 28, 48-55, R.R. at 125a-132a.) On September 18, 2013, Mr. Biernicki's associate reached a stipulation with the Board reducing the fair market value of No. 89 to $395,000. (Tax Appeal Stipulation, R.R. at 25a; H.T. at 29-30, 39-42, 48-55, R.R. at 106a-107a, 116a-120a, 125a-132a.) Taxpayer assumed the assessment and stipulation applied to the full Property. (H.T. at 39-42, R.R. at 116a-120a.) Mr. Biernicki

4

testified before the Trial Court that he was unaware that there was another parcel, that had he known he would have filed two assessment appeals, that his office acted and signed on Taxpayer's behalf beginning at the administrative level in 2012, and that he believed the Stipulation covered the whole Property. (H.T. at 48-55, R.R. at 125a-132a.) Mr. Dellecker, Allegheny County's attorney, testified that he had no memory of the Stipulation and could not testify as to whether No. 88 was discussed. (H.T. at 61-64, R.R. at 138a-141a.) Mr. Dellecker also testified that when a structure straddles two lots, as Taxpayer's house straddles No. 88 and No. 89, standard operating procedure is to assign the building value to a single lot and treat the second lot as a continuous side or back lot. (H.T. at 64, R.R. at 141a.)

In May 2013, prior to the Stipulation, Taxpayer and his neighbor, Alan Cuteri, who is a member of the Ben Avon Heights Council, were outside talking and Mr. Cuteri asked Taxpayer if he was aware that the Property was broken into two lots and that one of the lots had tax liens filed against it. (H.T. at 20, R.R. at 97a.) Taxpayer called Denise Raves, treasurer of the Ben Avon Heights Council, and she said that she had information that there were two lots that made up the Property and suggested that Taxpayer call the County Mapping Department. (H.T. at 20, R.R. at 97a.) Taxpayer then spoke with Amy Yanke, who is the Mapping Supervisor for Allegheny County in the Real Estate Department; Ms. Yanke discovered that only No. 89 had been transferred to Taxpayer when he purchased the Property, but that the Property also included No. 88, and suggested that Taxpayer have the lots combined into one parcel. (H.T. at 21-22, R.R. at 98a-99a.) However, in further investigating the matter, Ms. Yanke informed Taxpayer in a June 20, 2013 email that:

5

I have received a copy of the state statute of the state assessment law PA. 72 sub-section 5452.13 stating that when a correction has to be made by law the correction can be made only 5 yrs back & including the current year. In the scenario with your case in 1999 a deed was recorded and both parcels were listed [No. 88] & [No. 89]. When the deed was processed, erroneously only one parcel [No. 89] was transferred, this error was discovered in May 2013 which at that point our office corrected the error and transferred [No. 88] for tax years 2008 through 2013 which based on assessment law we followed instead of processing the deed back from time of recording in 1999.

Based on the recorded deed you did purchase the full lot which consists of parcels [No. 88] & [No. 89] which means you are responsible for any taxes to be paid by law. Any further concerns should be directed to liens department of Allegheny County [contact info] & your municipal tax authority regarding any past due taxes. These offices are the only authority that will be able to assist you with any concerns regarding past due taxes.

(Emails between Amy Yanke, Mapping Supervisor for Allegheny County, and Taxpayer, R.R. at 64a-65a; H.T. at 21-22, R.R. at 98a-99a.) Taxpayer was also sent a letter, dated Friday June 14, 2013 and signed by Scott Waslelewski, Senior Draftsman, stating that the lots could not be combined until all delinquent taxes were paid, and advising Taxpayer to contact the Allegheny County Treasurer's Office. (Waslelewski No. 88 Letter, R.R. at 36a.) Taxpayer then called Mr. Tobin, the attorney who has represented him throughout this matter, and Mr. Tobin began his investigation on behalf of Taxpayer. (H.T. at 23, R.R. at 100a.) Taxpayer, through Mr. Tobin, attempted to file a *nunc pro tunc* appeal of the assessments for No. 88 with the Board on October 23, 2013, citing an administrative breakdown. (Request for Late Appeal, R.R. at 15a.) Mr. Tobin sought to present Taxpayer's petition for relief before the Board on February 27, 2014 and because of scheduling issues, was granted a hearing on the petition for relief on April 27, 2014. (Tobin, Montgomery, Vogel emails, R.R. at 75a-77a.)

6

The record does not make clear when corrections were made to the Taxing Authorities' records for No. 88. Taxpayer submitted printouts of the Allegheny County Assessment website on July 18, 2013 that list the correct mailing address for No. 88 as "11 Oxford Road," the correct tax bill address as Taxpayer's bank, and provides that the assessed value for No. 88 was $39,600 in 2012 and $69,100 in 2013. (Allegheny County Assessment Website Printout, R.R. at 22a, 31a.) The same source identifies the address for No. 88 itself as simply "Oxford RD," and states that the lot is vacant. (*Id.*) There is also a tax bill in the record with the statement date July 19, 2013, addressed to Taxpayer and his deceased wife at "11 Oxford Road," which reflects liens in the name of the Teachouts. (No. 88 Jordan Tax Service Liens, R.R. at 17a.) There are no assessment notices or tax bills addressed to Taxpayer or his bank identifying a balance owed by him to the taxing Authorities for No. 88.

On May 28, 2014, the Board denied Taxpayer's request to file a late appeal of the assessments from 1999-2013 for No. 88. Following appeal to the Trial Court, the Trial Court conducted a hearing and issued an order but it did not issue an opinion containing findings of fact. During the hearing, the Trial Court specifically questioned each of the Taxing Authorities on whether they would stipulate that an administrative breakdown had taken place and each agreed that an administrative breakdown had taken place; following agreement, the Trial Court stated for the record that all parties stipulated to the fact that an administrative breakdown had taken place. (H.T. at 9-14, R.R. at 86a-91a.) Ultimately, however, the Trial Court concluded that Taxpayer was charged with knowledge of the two parcels when he received the Deed and that, even if he was not on notice, Taxpayer had not acted with due diligence once he discovered the existence of No. 88.

7

Following appeal to this Court, the Trial Court did not write a 1925(a) opinion and instead relied upon its order, which states, in relevant part:

> 1) the September 28, 1999, deed conveying the property at issue to [Taxpayer] and his wife (now deceased) clearly identified two parcels, Block and Lot No. 214-C-88 and Block and Lot No. 214-C-89;
>
> 2) assuming, arguendo, that [Taxpayer] was reasonably unaware of his ownership of parcel Block and Lot No. 214-C-88 until May of 2013, he did not file his request with the [Board] to appeal his assessment *nunc pro tunc* until April of 2014, thus demonstrating a lack of due diligence; and
>
> 3) assuming, arguendo, [Taxpayer] acted reasonably throughout the entire period in question, he has presented no authority supporting his request for tax exoneration.

(Trial Court September 3, 2014 Order.)

Before this Court, the Taxing Authorities argue in support of the Trial Court's order. The Taxing Authorities contend that Taxpayer is charged with knowledge of his Deed and that ignorance of its contents is a result of Taxpayer's own negligence. Second, the Taxing Authorities argue that Taxpayer's request to file an assessment appeal *nunc pro tunc* was untimely because he learned of the liens from his neighbor in May 2013 and he did not present his request for an appeal *nunc pro tunc* to the Board until April 24, 2014. The Taxing Authorities further argue that the delay cannot be excused by an administrative breakdown because the significant gap of time between notice and filing demonstrates a lack of due diligence.

Taxpayer argues that his late appeal is the result of an administrative breakdown both in 1999 when only No. 89 was transferred to his and his now deceased wife's name, and from 1999-2013 because he was not given notice of the

8

assessments for No. 88. Taxpayer also argues that the Taxing Authorities failed to demonstrate that he acted unreasonably or that the Taxing Authorities were prejudiced by his delay in bringing a *nunc pro tunc* appeal.

The Taxing Authorities rely on the contents of Taxpayer's deed and the maxim "if a party who can read…will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which…is not the subject of protection, either in equity or at law." *In re Greenfield's Estate*, 14 Pa. 489, 496 (1850); *see also Standard Venetian Blind Co. v. American Empire Insurance Co,* 469 A.2d 563, 566 (Pa. 1983). Although the rule cited by our Supreme Court in *Greenfield's Estate* remains axiomatic today, it is not dispositive of the instant matter. Taxpayer is not seeking to set aside his deed, denying its contents, or arguing he should be released from the obligations that accrued with his signature; the true remedy Taxpayer seeks is to pay the taxes owed, no more, no less.[4] A more availing analogy from the law of contracts, though equally inapplicable to the instant matter, is the principle of mutual mistake: both Taxpayer and the Taxing Authorities failed to ascertain that the Property was divided into two unconsolidated lots and only one of the lots was transferred to Taxpayer and his now deceased wife.[5] The record demonstrates, however, that the Taxing

---

[4] Before the Trial Court and this Court, Taxpayer asked for exoneration of his taxes merely as an alternative remedy if he is unable to file an appeal *nunc pro tunc*. (Taxpayer's brief at 33; *see also* H.T. at 66, R.R. at 143a.)

[5] There is no question that Taxpayer has a duty to pay taxes on No. 88. However, the recorder of deeds likewise has a duty to properly record the conveyance of real property. *See* Section 6 of the Second Class County Assessment Law, Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. § 5452.6 ("Recorder of deeds to file reports of conveyances with board: It shall be the duty of the recorder of deeds in each county of the second class to report every deed or conveyance of land in said county entered in his office for recording, which record shall set forth the following information, to wit: The recording date of the deed or conveyance, the names of the grantor and

Authorities had ample notice in the form of mounting liens and undeliverable notices that something here was amiss. Yet it was Taxpayer's own investigation, rather than action by the Taxing Authorities, which brought this matter to light.

In *Connor v. Westmoreland County Board of Assessment Appeal*, 598 A.2d 610 (Pa. Cmwlth. 1991), this Court addressed whether the taxpayer had presented sufficient allegations of fact which could support a grant of an appeal *nunc pro tunc*, warranting a hearing before the trial court, and if the facts were proven, remand to the county board of assessment appeal to hear taxpayer's appeal *nunc pro tunc*. *Id*. at 612. Reviewing the allegations in the taxpayer's petition, this Court concluded that:

> Even though mere allegations of a failure to receive notice are insufficient cause for allowing an appeal *nunc pro tunc*, [taxpayer's] petition contains more than mere allegation of a failure to receive notice. He sets forth specific facts which, if proven, may constitute negligence on the part of the [taxing authority] in mailing the tax assessment notices. A failure to properly send a notice may amount to a breakdown in operations which is the equivalent of negligence on the part of administrative officials.

*Id*. at 612 (internal citations omitted). Holding that sufficient facts had been alleged by the taxpayer, this Court remanded the matter in *Connor* to the trial court to hold a hearing on the petition. *Id*. at 613. What distinguishes *Connor* from the instant matter is the fact that a hearing was held below and Taxpayer did prove that the Board was negligent in mailing Taxpayer tax assessment notices, even though the Taxing Authorities had knowledge that the address it was mailing the tax

---

grantee in the deed, the location of the property as to city, borough, ward, town, or township mentioned. It shall be the further duty of the recorder at intervals to file the aforesaid report in the office of the board together with his certificate appended thereto that such record is correct.").

assessment notices to did not exist. We cannot, on this record, conclude that the failure to transfer No. 88 and the failure to give notice of multiple years of tax assessments are negated, or that Taxpayer's request for *nunc pro tunc* relief can be resolved, by the fact that Taxpayer failed to appreciate that his deed identified one Property consisting of two separate lots.

Nor can we conclude that Taxpayer should be denied *nunc pro tunc* relief because he failed to exercise due diligence following discovery of No. 88 and the back taxes owed. The Trial Court identifies May 2013 as the time when Taxpayer first learned of No. 88 and the liens against the lot by the Taxing Authorities. The record makes clear, however, that Taxpayer did not, for example, receive notice from the Taxing Authorities in May 2013 or learn about the taxes owed from the assessment appeal he was engaged in for No. 89. Instead, May 2013 marks the general period when Taxpayer learned of the possibility of the predicament in which he now finds himself via a vague conversation by happenstance with one of his neighbors. Following this conversation, Taxpayer took consistent, documented steps to resolve the situation and determine the amount he must pay the Taxing Authorities. The inability of the Taxing Authorities to schedule a hearing on Taxpayer's request to appeal *nunc pro tunc* until April 24, 2014 does not amount to a lack of due diligence on Taxpayer's part, any more than the scheduling of a hearing on a plaintiff's complaint by the court affects the statute of limitations applicable to the counts alleged.

The Taxing Authorities cite a series of cases in support of their argument that Taxpayer failed to exercise due diligence, focusing in each instance on the amount of time between when the petitioner realized the necessity for action and when the petitioner filed the request to appeal *nunc pro tunc*. For example, in

11

*Department of Transportation, Bureau of Traffic Safety v. Johnson*, 569 A.2d 409 (Pa. Cmwlth. 1990), this Court denied the petitioner's request to appeal *nunc pro tunc* a license suspension for failure to submit to a blood test because the petitioner was aware of the suspension at the end of April but did not file an appeal *nunc pro tunc* until the end of July. *Id*. at 411. Similarly, in *Kaminski v. Montgomery County Board of Assessment*, 657 A.2d 1028 (Pa. Cmwlth. 1995), the taxpayers received notice of a tax assessment that they timely appealed to the county board of assessment appeals, but there was a six-month delay in the taxpayers' appeal to the trial court. *Id*. at 1031-1032.

Although time is certainly a factor, our cases addressing due diligence do not rest on the specific amount of time that lapses between a petitioner gaining knowledge of the need to act and a petitioner filing for *nunc pro tunc* relief. In *Kaminski*, we held that the taxpayers had failed to establish a right to appeal *nunc pro tunc* not because of the length of time that had passed but because "[t]axpayers have not attempted to explain the reason for this lapse in time." *Id*. at 1032. Likewise, in *Johnson* we noted that the standard for a *nunc pro tunc* appeal established by our Supreme Court in *Bass v. Commonwealth*, 401 A.2d 1133 (Pa. 1979), limited relief to instances where there had been "unique and compelling factual circumstances presented to the court." *Johnson*, 569 A.2d at 411. This Court then concluded that the petitioner in *Johnson* was not entitled to relief because "[a] review of the record in the case *sub judice* indicates that such unique and compelling factual circumstances do not exist." *Id*. In the instant matter, Taxpayer has presented unique and compelling factual circumstances to the court to explain his delay in requesting to file an appeal *nunc pro tunc*. Moreover, even if a bright line rule regarding the length of time within which a petitioner seeking

12

*nunc pro tunc* relief must act was discernable, it would not be applicable to the instant matter.

The factual matrix here is markedly distinct from requests to appeal *nunc pro tunc* that typically reach this Court. In *Johnson*, notice of the license suspension was mailed to the petitioner's home. This fact pattern is typical of *nunc pro tunc* appeals: the petitioner receives notice of governmental action; the petitioner does not challenge the governmental action within the specified time period; and the petitioner, citing good cause, requests additional time to respond.[6] By contrast, in the instant matter, the record fails to demonstrate that Taxpayer received an assessment for No. 88 prior to his request to appeal *nunc pro tunc*.[7] Instead, Taxpayer went to the Taxing Authorities and requested that they take action. The facts demonstrate that even upon receiving a vague suggestion from a neighbor that his Property was divided into two lots, Taxpayer followed up, weaving from one official to another among the Taxing Authorities until it became clear that he needed legal assistance. In discussing the meaning of "due diligence", our Supreme Court concluded in *Sprague v. Casey*, 550 A.2d 184 (Pa. 1988), that:

---

[6] *See, e.g. Suber v. Unemployment Compensation Board of Review*, 126 A.3d 410 (Pa. Cmwlth. 2015); *Schofield v. Department of Transportation, Bureau of Driver Licensing*, 828 A.2d 510 (Pa. Cmwlth. 2003); *Ardolino v. City of Pittsburgh Civil Service Commission*, 658 A.2d 847 (Pa. Cmwlth. 1995); *Bradley v. Pennsylvania Board of Probation and Parole*, 529 A.2d 66 (Pa. Cmwlth. 1987); *Western Pennsylvania Water Co. v. Board of Property Assessment Appeals and Review, Allegheny County*, 439 A.2d 1259 (Pa. Cmwlth. 1981).

[7] In *Schmidt v. Commonwealth*, 433 A.2d 456 (Pa. 1981), our Supreme Court held that where the time in which an appellant has to commence an appeal is triggered by the date of mailing of notice of action taken by a governmental unit, such as a notice of determination from a tax appeals board, the governmental unit has a duty to clearly advise the appellant of the date of mailing. *Id.* at 458. This rule is certainly applicable to the underlying governmental action that led a petitioner to seek redress from the governmental unit in the first place. *See also California University of Pennsylvania v. Zoning Hearing Board of Borough of California*, 107 A.3d 241, 246 (Pa. Cmwlth. 2014) (confusion created by zoning board notice regarding the actual date the appeal period began created grounds for *nunc pro tunc* relief).

> The correct inquiry in determining whether his conduct resulted in a want of due diligence is to focus not upon what the plaintiff knows, but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him. What the law requires of petitioner is to discover those facts which were discoverable through the exercise of reasonable diligence. In the instant case, petitioner had not only to discover the facts surrounding his claim, but also to ascertain the legal consequences of those facts.

*Id.* at 188 (internal citations omitted) (holding that six and one half months between constructive notice of factual circumstances and commencement of legal action did not demonstrate a lack of due diligence). Like the petitioner in *Sprague*, Taxpayer exercised reasonable diligence to discover the facts underpinning his request to appeal *nunc pro tunc* and the legal consequences of those facts. The record does not support the conclusion that Taxpayer dawdled in doing so. Moreover, the Taxing Authorities' argument to the contrary is undermined by its own failure to untangle this situation for more than thirteen years, despite possessing superior knowledge.[8]

---

[8] Though not wholly analogous to the factual circumstances at issue here, *Eye & Ear Hospital v. Department of Public Welfare*, 514 A.2d 976 (Pa. Cmwlth. 1986), is instructive. In *Eye & Ear Hospital*, this Court held that it was an abuse of discretion for the Department of Public Welfare to deny waiver of the time period within which the petitioner-hospital could seek specific Medicaid reimbursements following confusion over whether Department of Health approval was necessary for the provision of certain services. *Id.* at 977, 981. We concluded that the Department of Public Welfare created confusion regarding the applicable regulatory scheme and the time frame within which reimbursement requests must be made, and that this confusion when combined with evidence that the petitioner-hospital acted with diligence "once the regulatory policy was fully elucidated," obliged the Department of Public Welfare to allow the petitioner-hospital additional time to submit its claims. *Id.* at 981. In reaching this conclusion, we reasoned that the rule that "those in the position of the hospitals, operating under and seeking the benefits of a government-funded program, must be charged with knowledge of the applicable regulatory scheme," was inapplicable. *Id.* at 979. We noted that this was not an instance where the petitioner-hospital was arguing that the regulation was inapplicable or that the Department of

14

Next, Taxpayer argues that the five-year statutory period allowing for revision of assessments or the six-year statutory period allowing for correction of assessment errors provided by the Second Class County Assessment Law should not apply to his unique factual situation, and instead Taxpayer should be permitted to appeal the assessment of No. 88 dating back from 2013 to his purchase of the Property in 1999.

There are two sections of the Second Class County Assessment Law addressing revision of assessments in counties of the second class. Section 13 provides that the taxing authorities shall add property omitted to the assessment roll between triennial assessments but that the taxing authorities may only go back five years preceding the year when the omitted property was added to the rolls and that the taxpayer retains the right to appeal the assessment for this five year period.[9] Section 13.a provides that where a mathematical or clerical error is made

Public Welfare could not enforce the regulation, but was instead a question as to whether, having created or at least significantly contributed to the need to request additional time to act, it was an abuse of discretion to deny that time to the petitioner-hospital. *Id*. at 980. Unlike *Johnson* and *Kaminsi*, *Eye & Ear Hospital* contained unique and compelling facts, and facts which required this Court to examine the effect confusion created by governmental action had on a petitioner's ability to act diligently.

[9] Section 13 states, in relevant part:

> The proper assessors shall, between the triennial assessments, revise any assessment or valuation according to right and equity by correcting errors and by adding thereto any property, improvements or subjects of taxation which may have been omitted or any new property, improvements or subjects of taxation which may have come into being since the last triennial assessment. Any property, improvements or subjects of taxation which may have been omitted shall be assessed and made subject to taxation for the period during which said property, improvements or subjects of taxation shall have been omitted but in no event to exceed the period of five calendar years preceding the year in which the property, improvements or subjects of taxation omitted is first added to the assessment roll. Any such assessments as are made pursuant to the provisions of this paragraph shall be subject to appeal in the same manner as other assessments made pursuant to this act. Taxes levied on any such assessment shall not be made

and a taxpayer has been required to pay more than was required, a refund shall be made to the taxpayer for the period of the error or for six years, whichever is less.[10] Neither Section 13 nor Section 13.a of the Second Class County Assessment Law is applicable to the situation here. No. 88 was not accidentally omitted and Taxpayer does not seek a refund of taxes paid due to clerical error. As a result, there is no bar to prohibit Taxpayer from contesting in his *nunc pro tunc* appeal the assessed value of No. 88 beginning with his purchase of the Property.

In sum, the record demonstrates repeated administrative breakdowns that constitute the extraordinary circumstances a *nunc pro tunc* appeal was intended to remedy, Taxpayer demonstrated due diligence in pursuit of his request to appeal *nunc pro tunc*, and the Second Class County Assessment Law does not

---

subject to the payment of any interest and penalties otherwise provided by law, except as the same are computed from the date of assessment made pursuant to this section. No bona fide purchaser of any property or subject of taxation without knowledge that the property or subject of taxation was omitted from assessment for purposes of taxation shall be subject to any taxation based upon the additional assessment made pursuant to this section.

72 P.S. § 5452.13.

[10] Section 13.a, *added by* Act of December 12, 1988, P.L. 1437 states in full:

Whenever, through mathematical or clerical error, an assessment is made more than it should have been and taxes are paid on such incorrect assessment, the Board of Property Assessment, Appeals and Review, upon discovery of such error and correction of the assessment, shall so inform the appropriate taxing district or districts, which shall make a refund to the taxpayer or taxpayers for the period of the error or six years, whichever is less, from the date of application for refund or discovery of such error by the board. For the purposes of this section, in counties of the second class, "mathematical or clerical error" shall mean the difference between the assessment as certified for a given tax year by the Board of Property Assessment, Appeals and Review and the assessment upon which taxes are billed and paid. Reassessment, revision of assessment or certification of assessment with or without application by the owner as a decision of judgment based upon the method of assessment by the board shall not constitute an error under this section.

72 P.S. § 5452.13a.

16

prohibit Taxpayer from challenging the assessments in his appeal dating back to his purchase of No. 88. Accordingly, the order of the Trial Court is reversed and this matter is remanded to the Trial Court with direction to remand to the Board to permit Taxpayer to pursue a *nunc pro tunc* appeal.

**JAMES GARDNER COLINS, Senior Judge**

Judge McCullough did not participate in the decision of this case.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| William H. Croft, | : |
|               Appellant | : |
| | : |
|        v. | : No. 116 C.D. 2015 |
| | : |
| Board of Property Assessment, Appeals | : |
| and Review, Borough of Ben Avon | |
| Heights, Avonworth School District, | : |
| Allegheny County | : |

## ORDER

AND NOW, this 8th day of March, 2016, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is REVERSED and this matter is REMANDED to the Court of Common Pleas of Allegheny County with direction to REMAND to the Allegheny County Board of Property Assessment, Appeals and Review to permit William H. Croft (Taxpayer) to appeal *nunc pro tunc* the real estate tax assessments for Block and Lot No. 214-C-88 beginning with Taxpayer's purchase of 11 Oxford Road, Pittsburgh, PA, in Ben Avon Heights Borough, Allegheny County in 1999 up to the 2013 real estate tax assessment.

Jurisdiction relinquished.

_____

**JAMES GARDNER COLINS, Senior Judge**