# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aquil Johnson,                  :
              Petitioner     :
                                 :
             v.                :    No. 497 M.D. 2018
                                 :    Submitted: February 15, 2019
John Wetzel, Secretary PA. D.O.C.,    :
Mark Garman, Super., S.C.I. Rockview   :
et al., Officers, Agents, Servants,       :
Employees and Attorneys,           :
             Respondents   :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: June 3, 2019**

Before this Court in our original jurisdiction are the preliminary objections (POs) of John Wetzel, Secretary PA. D.O.C., Mark Garman, Super., S.C.I. Rockview, et al., Officers, Agents, Servants, Employees and Attorneys (together, Respondents) to the Amended Petition for Review (Amended Petition) filed by Aquil Johnson, an inmate currently incarcerated at the State Correctional Institution at Rockview. Also before the Court are Johnson's POs to Respondents' POs, challenging Respondents' assertion of the affirmative defenses of expiration of the statute of limitations and immunity as POs. Johnson's claims arise out of the Department of Corrections' (Department) deduction of monies from his inmate

account under what is commonly known as Act 84[1] to satisfy financial obligations associated with two criminal convictions.

## I. Background

### a. *Johnson's Averments*

Johnson filed his initial Petition for Review (Initial Petition) on or about July 19, 2018, and, after Respondents filed POs, filed the Amended Petition on or about August 20, 2018, with the Court's permission. Johnson avers the following.[2] The Court of Common Pleas of Philadelphia County (Sentencing Court) sentenced Johnson on two unrelated criminal matters on March 15, 2013. (Amended Petition ¶ 13.) "At the sentencing hearing[,] the [S]entencing [C]ourt never informed [Johnson] of the total amount of cost[s] owed or that the [Department] was going to deduct funds from [his] Inmate Account," he was not afforded an ability-to-pay

---

[1] Act 84 was passed by the General Assembly on June 18, 1998, and amended Section 9728 of the Sentencing Code, 42 Pa. C.S. § 9728, by adding subsection (b)(5). Section 9728(b)(5) permits the Department to collect fines, costs, and restitution from inmate prison accounts and forward the fund to the sentencing county. That subsection provides:

> The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation or costs imposed under section 9721(c.1). Any amount deducted shall be transmitted by the Department of Corrections or the county correctional facility to the probation department of the county or other agent designated by the county commissioners of the county with the approval of the president judge of the county in which the offender was convicted. The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph.

42 Pa. C.S. § 9728(b)(5). This section was amended in 2010 to add the reference to Section 9721(c.1). Act of October 27, 2010, P.L. 949, effective December 27, 2010.

[2] Johnson incorporates the allegations and claims of the Initial Petition into the Amended Petition.

hearing at which he could contest or object to the costs, and he was not provided a copy of the Department's policy regarding collecting costs and fines. (*Id.* ¶ 14.)

The Department made its first deduction from Johnson's inmate account in June 2013 without providing him any notice of the deduction, the total amount owed, how the deduction would occur, and without giving him an ability-to-pay hearing or an opportunity to object or contest the deduction. (*Id.* ¶¶ 15, 17.) Johnson became aware of the deduction in July 2013, inquired about the nature of the deduction with an inmate counselor (Counselor), and was told that the deductions were lawful and that, in order for the deductions to end, Johnson had to pay the full amount. (*Id.* ¶ 16.) Johnson filed a grievance on June 17, 2018, after learning of the Supreme Court's decision in *Bundy v. Wetzel*, 184 A.3d 551 (Pa. 2018) (*Bundy I*).[3] While the grievance was granted as to the lack of notice and an opportunity to object, his request for a refund or for damages was denied. (*Id.* ¶ 18.) Johnson's appeal of this grievance was denied, as was a second grievance. (*Id.*) As of the date of the Amended Petition, the Department had deducted a total of $858.80 for the two criminal cases. (*Id.* ¶ 19.)

Based on these facts, Johnson asserted[4] a claim for replevin seeking to recover the funds he avers the Department wrongfully took from his inmate account because it did not provide him with notice prior to the first deduction in

---

[3] In *Bundy I*, the Supreme Court held that due process requires that, prior to the first deduction, the Department advise "the inmate of the total amount of [the inmate's] financial liability as reflected in [the] sentencing order, as well as the Department's policy concerning the rate at which funds will be deducted . . . and which funds are subject to deduction," and the Department must also provide "the inmate a reasonable opportunity to object to the application of the Department's policy to [the inmate's] account." 184 A.3d at 558-59. Therefore, the Supreme Court reversed this Court's order sustaining the Department's demurrer and dismissing the inmate's complaint, and remanded for further proceedings.

[4] Neither the Initial Petition nor the Amended Petition set forth specific counts.

3

violation of his due process rights. (Initial Petition ¶¶ 17-19; Initial Petition at 6-9.) He claims the funds were taken wrongfully because he was denied an ability-to-pay hearing, to which he was entitled due to various changes in his circumstances that encumber his access to the courts. First, the Department changed its legal mail policy "sometime in 2016" to prohibit an inmate's account from going into the negative, which encumbers his access to the courts as reflected by the Department's refusal "on August 22, 2016, . . . to mail [Johnson's] legal mail to the courts because he did not have enough money to cover the cost of postage." (Initial Petition ¶¶ 24-31; Initial Petition, Exs. AP2-AP6.) Second, due to his "expanded caseload," his litigation costs have increased. (Initial Petition ¶¶ 33-34.) Combining the increased litigation costs with his need to purchase basic necessities from the commissary, the Act 84 deductions have "place[d] an un-sustainable [sic] burden on [Johnson's] ability to access the courts which may result in [him] loosing [sic] important rights." (*Id.* ¶ 35.) Third, he has lost some of his support system and only rarely receives monetary gifts, which along with his lack of assets or cash reserves and the Act 84 deductions, results in a change in his financial status that encumbers his ability to access the courts. (*Id.* ¶¶ 37-38.)

Johnson also asserted the deductions were wrongly taken based on the actions of the Sentencing Court and/or actions of the Department's employees. First, the Sentencing Court did not conduct an ability-to-pay hearing or give him adequate notice and a chance to contest or object to the costs and fines[5] as required by Section 9726 of the Sentencing Code, 42 Pa. C.S. § 9726; *Ingram v. Newman*, 830 A.2d 1099 (Pa. Cmwlth. 2003); and *Holloway v. Lehman*, 671 A.2d 1179 (Pa.

---

[5] Although Johnson references "fines" in his averments, he was not sentenced to pay any fines; thus, only court costs and a payment to the Crime Victim's Compensation Fund are being deducted. (Initial Petition, Exs. RSO3-RSO4.)

4

Cmwlth. 1996). (Initial Petition ¶¶ 39-45.) As the Sentencing Court never inquired as to Johnson's ability to pay, advised him of the total amounts, or gave him the ability to object, he was denied due process. (*Id.*) Second, the Sentencing Court did not sign the order authorizing the Act 84 deductions, and the order did not specify whether he was required to pay the costs while he was in prison or on parole. (*Id.* ¶¶ 46-54.) Third, when Johnson inquired as to the nature of the deductions in July 2013, Counselor stated they were lawful and he relied upon that misrepresentation.[6] (*Id.* ¶¶ 60-61.)

In the Amended Petition, Johnson asserted a count for the negligent handling of his personal property resulting in his injury. He avers that "[R]espondents owed [him] a duty to exercise reasonable care and diligence when handling [his] inmate account which consisted of his personal private property." (Amended Petition ¶ 21.) This obligated Respondents to "maintain, regulate and operate [Johnson's] inmate account with ordinary care and diligence in a manner consistent with State and Federal Law and [Department] Policy." (*Id.* ¶ 22.) Respondents breached those duties by not "exercis[ing] ordinary care and reasonable diligence in maintaining, regulating and operating [Johnson's] inmate account including:" (1) not giving him notice and opportunity to object to the Act 84 deductions prior to the first deduction; (2) not following Federal and State Law and Department Policy

---

[6] The Initial Petition further averred that an inmate challenging Act 84 deductions does not have to exhaust the administrative grievance procedure because such procedures do "not meet the minimum standards established by the Law," *Holloway*, 671 A.2d at 1182; *see also Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374 (Pa. Cmwlth. 2017); *Montanez v. Secretary Pennsylvania Department of Corrections*, 773 F.3d 472 (3d Cir. 2014). (Initial Petition ¶¶ 55-59.) If the exhaustion requirement has to be met, Johnson asked that this litigation be stayed pending the outcome of that process. (*Id.* ¶¶ 63-66.) However, Respondents did not file any PO asserting Johnson failed to exhaust his administrative remedies, and, therefore, we will not address these allegations further.

by failing to give him notice before the first deduction; and (3) not following the Department's Policy by failing to give him notice that he could appeal the deductions. (*Id.* ¶ 23.) Despite knowing they were to provide notice prior to the first deduction, Respondents negligently deducted and continue to deduct funds from Johnson's inmate account. (*Id.* ¶ 24.) As a direct result of Respondents' negligence, Johnson has suffered injury and damages in the nature of a violation of his due process rights under the Fourteenth Amendment to the United States Constitution, and monetary loss of $858.80. (*Id.* ¶¶ 25-26.)

As relief, Johnson seeks a return of his funds, special damages in the amount of statutory interest on that amount, nominal damages in the amount of $200 or $350, and "[a]ttorney [f]ees if or when they become applicable." (Initial Petition ¶ 72; Amended Petition ¶ 27.) Absent from the Initial Petition and Amended Petition is a specific request for declaratory or injunctive relief.

### b. *Respondents' POs*

Respondents filed two POs in the nature of demurrers to Johnson's claims: one challenging the legal sufficiency of Johnson's Act 84 claims, and the other challenging the legal sufficiency of Johnson's negligence/replevin claim. In the first demurrer, Respondents allege the following. First, "[i]t is clear on the face of the [Petitions] that [Johnson's] Act 84 claim is barred by the applicable statute of limitations." (Respondents' POs ¶ 19.) Citing *Davis v. Commonwealth*, 660 A.2d 157, 159 n.2 (Pa. Cmwlth. 1995), Respondents contend that although expiration of the statute of limitations is an affirmative defense, it "may be raised in preliminary objections where the defense appears on the face of the pleading to which objections were raised." (Respondents' POs at 2 n.1.) Respondents assert the statute of limitations for an Act 84 claim is two years pursuant to *Morgalo v.*

6

*Gorniak*, 134 A.3d 1138 (Pa. Cmwlth. 2016), Johnson's claim accrued at the time of the Department's first deduction in June 2013, and, under precedent, future deductions do not extend the limitations period "under a continuing violation theory." (*Id.* ¶¶ 20-23.) Because this action was not filed within two years of the June 2013 deduction, Respondents aver the action is time barred. (*Id.* ¶ 23.)

Respondents also assert that: the Department has the authority to collect Act 84 costs where there is a court order imposing such costs, *Spotz v. Commonwealth*, 972 A.2d 125 (Pa. Cmwlth. 2009); there is no requirement that there be a prior court order for the Department to impose those costs, *George v. Beard*, 824 A.2d 393, 396-97 (Pa. Cmwlth. 2003); and the Department can rely on the calculation of costs by the clerk of courts, *Richardson v. Department of Corrections*, 991 A.2d 394 (Pa. Cmwlth. 2010); *Richardson v. Peters* (Pa. Cmwlth., No. 618 M.D. 2009, filed July 25, 2011) (per curiam order). (Respondents' POs ¶¶ 24-30.) In addition, Respondents allege the sentencing orders attached to the Initial Petition reflect the amounts owed, and further that pursuant to Section 9721(c.1) of the Sentencing Code, 42 Pa. C.S. § 9721(c.1), no court order is required for a defendant to be liable for costs.

As for Johnson's due process claims, Respondents' demurrer cites Supreme Court precedent rejecting the contention that an ability-to-pay hearing was required prior to the Department beginning Act 84 deductions as the Sentencing Court affords all the process that is due regarding a defendant's ability to pay, *Buck v. Beard*, 879 A.2d 157, 160-61 (Pa. 2005). (Respondents' POs ¶¶ 31-32.) Further, Respondents contend they are entitled to qualified immunity because it was not clearly established in June 2013 that the Department had to provide Johnson with a pre-deprivation process before taking Act 84 deductions, as *Montanez v. Secretary*

7

*Pennsylvania Department of Corrections*, 773 F.3d 472 (3d Cir. 2014), was not decided until 2014 and *Bundy I*, adopting *Montanez*'s due process requirements, was not decided until 2018. (Respondents' POs ¶¶ 33-34.) Thus, Respondents assert they are immune from Johnson's claims for monetary damages. (*Id.* ¶ 35.)

On the negligence claim, Respondents assert the negligence claim replaced the replevin claim and has a two-year statute of limitations that bars Johnson's negligence action because the first deduction occurred in June 2013, Johnson admits he became aware of the deduction in July 2013, and he did not file the action until more than two years after these events. (*Id.* ¶¶ 36-39.) Respondents further allege that Johnson's averments as to negligence are really premised on alleged intentional conduct by Respondents, which renders the claim barred by sovereign immunity. (*Id.* ¶¶ 41-44.) Respondents assert that they did not know in July 2013 that inmates were to be given notice and an opportunity to object prior to when Act 84 deductions could occur. (*Id.* ¶ 45.) Therefore, the negligence claim is either time-barred or Respondents are entitled to sovereign immunity. (*Id.* ¶ 46.)

### c. *Johnson's POs and Answer*

Johnson filed his POs asserting that Respondents improperly raised the affirmative defenses of the statute of limitations and immunity as POs. (Johnson's POs ¶¶ 12, 33.) While Johnson acknowledges that such defenses can be raised when the defense is clear on the face of the complaint, if there is an objection to the raising of the defense as a preliminary objection, the Court should not sustain the preliminary objections. (*Id.* ¶¶ 13-15, 34-35 (citing *Davis*, 660 A.2d at 159 n.2; *Wurth v. City of Philadelphia*, 584 A.2d 403, 406-07 (Pa. Cmwlth. 1990)).) He further asserts the statute of limitations PO should be overruled under the doctrine of fraudulent concealment, which tolls the running of the statute of limitations, as a

result of Counselor telling Johnson in July 2013 that the Act 84 deductions were lawful. (*Id.* ¶¶ 16-22, 27.) He additionally objects to Respondents' reliance on *Buck* given the Supreme Court's recent decision in *Bundy I*, in which Johnson asserts that the Court discussed the need to provide an ability-to-pay hearing if a change in circumstances hinders an inmate's access to the courts. (*Id.* ¶¶ 30-31.) He also challenges the contention that the Sentencing Court gave him due process because that court did not provide him with an ability-to-pay hearing, or inquire into his financial ability to pay the costs. (*Id.* ¶ 32.) As for Respondents' assertions of immunity, in addition to observing that immunity is an affirmative defense, Johnson challenges the substance of the demurrer, mainly that Respondents would be entitled to sovereign immunity for the negligence claim or qualified immunity for the Act 84 claims. He asserts there was case law and a Department Policy that required such process in 2013. (*Id.* ¶¶ 36-37, 43-52, 55-57.) Johnson's Answer to the POs essentially reiterates the rationale set forth in his POs.

## II.    Discussion

In ruling on preliminary objections in the nature of a demurrer, our review is limited to the pleadings. *Morgalo*, 134 A.3d at 1141. In reviewing the pleadings, we are

> required to accept as true the well-pled averments set forth in the . . . complaint, and all inferences reasonably deducible therefrom. Moreover, the [C]ourt need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.

9

*Pa. State Lodge, Fraternal Order of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 415-16 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007).

Several of Respondents' demurrers are based on affirmative defenses that generally should be raised in a responsive pleading as new matter, as Johnson points out. *See* Pennsylvania Rules of Civil Procedure 1028 and 1030, Pa.R.C.P. Nos. 1028, 1030. These rules generally apply in matters filed in this Court's original jurisdiction. *See* Pennsylvania Rule of Appellate Procedure 106, Pa.R.A.P. 106.[7] If an affirmative defense is asserted as a preliminary objection, the proper way to object is to file a preliminary objection to the preliminary objection. *McCreary v. City of Philadelphia*, 505 A.2d 385, 386 (Pa. Cmwlth. 1986). Where such an objection is raised, the improper preliminary objection may be stricken. *Id.* However, our Court has recognized that where it is clear on the face of the pleading that an affirmative defense would apply, the defense "may be raised in preliminary objections when to delay a ruling thereon would serve no purpose," even where the opposing party has objected. *Feldman v. Hoffman*, 107 A.3d 821, 830-32, 835 n.14 (Pa. Cmwlth. 2014) (citations omitted).

With these principles in mind, we consider the particular POs before us.

### a. Negligence Claim[8]

Respondents assert two bases for dismissing Johnson's negligence claim, which we agree had the effect of replacing his replevin claim. Respondents argue that Johnson fails to state a claim because: the alleged actions by Respondents

---

[7] This rule states "[u]nless otherwise prescribed by these rules the practice and procedure in matters brought before an appellate court within its original jurisdiction shall be in accordance with the appropriate general rules applicable to practice and procedure in the courts of common pleas, so far as they may be applied." Pa.R.A.P. 106.

[8] For ease of discussion, we have reordered Johnson's claims.

were intentional, not negligent in nature, and a claim based on intentional conduct is barred by sovereign immunity; and, Respondents' actions began more than two years before the filing of the Initial Petition, rendering Johnson's claim time-barred. Johnson filed POs challenging Respondents' assertion of these affirmative defenses as demurrers. We first consider whether Johnson has failed to state a claim for the negligent handling of his inmate account.

To state a negligence claim, "the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998). "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Id.* "[T]he plaintiff has the burden of establishing, by a preponderance of the evidence, that the defendant engaged in conduct that deviated from the general standard of care expected under the circumstances, and that this deviation proximately caused actual harm." *Id.* In actions against the government and government employees, if the acts alleged are intentional, rather than negligent in nature, the claims based on those intentional actions are barred by sovereign immunity under Section 8521 of what is commonly known as the Sovereign Immunity Act, 42 Pa. C.S. § 8521. *Crockett v. Edinboro Univ.*, 811 A.2d 1094, 1095-96 (Pa. Cmwlth. 2002).[9]

---

[9] Under the Sovereign Immunity Act, "[a] Commonwealth party is not liable unless[:] 1) the alleged act of the Commonwealth party is a negligent act for which damages would be recoverable under the common law or by statute"; and "2) the act of the Commonwealth party falls within one of the exceptions listed in [Section 8522(b) of the Sovereign Immunity Act,] 42 Pa. C.S. § 8522(b)." *Crockett*, 811 A.2d at 1095-96 (citing 42 Pa. C.S. § 8522(a), (b)). Those exceptions are required to be narrowly interpreted and strictly construed. *Id.*

A review of Johnson's averments reveals that they recite the general elements of a negligence claim, but do not articulate how Respondents negligently handled Johnson's property. Rather, the facts pled refer to intentional conduct by Respondents. (Amended Petition ¶¶ 21-25.) Johnson alleges his negligence claim arises from the facts that Respondents **took** the deductions from his account, and they **failed** to give him notice as required by federal and state law and the Department's policy before doing so. (Amended Petition ¶¶ 15-17, 23.) Thus, Johnson's claims are based on Respondents' **taking or seizing** his property, an intentional act, without providing him notice. Importantly, an inmate "**may not recover in negligence for** the alleged **taking of money from his inmate account**," as such actions constitute intentional conduct. *Dep't of Corr. v. Tate*, 133 A.3d 350, 359-60 (Pa. Cmwlth. 2016) (emphasis added). In addition, Johnson asserts that, when he inquired about the deductions, Counselor stated the deductions were valid and would continue until the costs were fully paid. (Amended Petition ¶ 17.) This, too, is an allegation based on Counselor's intentional act. Because it is clear from the face of the Initial Petition and Amended Petition that sovereign immunity would apply as "the acts alleged are not negligent acts," *Crockett*, 811 A.2d at 1096, we overrule Johnson's PO challenging Respondents' assertion of that defense to this claim. And, it "appear[ing] with certainty that the law will not permit recovery" on Johnson's negligence claim, Respondents' PO is sustained and that claim is dismissed with prejudice. *Spotz*, 972 A.2d at 129. Respondents' PO to the negligence claim based on the expiration of the statute of limitations, and Johnson's corresponding PO, are dismissed as moot.

12

### b. *Act 84 Claims*

We now consider Respondents' demurrer to Johnson's Act 84 claims. Respondents assert that Johnson has failed to state a claim to challenge the Act 84 deductions for a variety of reasons. We address each reason in turn.

### 1. The lack of signed order imposing court costs.

Respondents first assert that, contrary to Johnson's claims, no signed sentencing order imposing the costs being deducted is required because the imposition of costs is mandatory under Section 9721(c.1) of the Sentencing Code, 42 Pa. C.S. § 9721(c.1). Citing cases interpreting Section 9728(b)(5) of the Sentencing Code, 42 Pa. C.S. § 9728(b)(5), Johnson argues an order imposing costs signed by the Sentencing Court is required before Respondents are authorized to deduct any monies from his inmate account pursuant to Act 84.

Section 9728(b)(5) of the Sentencing Code authorizes the Department to deduct funds from an inmate's personal account to pay for **court-ordered** financial obligations arising from the inmate's criminal conviction. 42 Pa. C.S. § 9728(b)(5). However, that section also authorizes the Department to deduct funds for costs imposed under Section 9721(c.1) of the Sentencing Code. 42 Pa. C.S. § 9728(b)(5). Section 9721(c.1) of the Sentencing Code, provides that, "**[n]otwithstanding** the provisions of **Section 9728** . . . or any other provision of law to the contrary," courts of common pleas are required to order defendants to pay the costs of their prosecution and that, "**[i]n the event the court fails to issue an order for costs . . . , costs shall be imposed upon the defendant under this section**." 42 Pa. C.S. § 9721(c.1) (emphasis added). "**No court order shall be necessary** for the defendant **to incur liability** under" Section 9721(c.1). *Id.*

13

(emphasis added).[10] The relevant provisions of Sections 9728(b)(5) and 9721(c.1) of the Sentencing Code were in effect at the time Johnson was sentenced,[11] placing him "on notice of the Department's statutory authority to deduct funds from his account." *Buck*, 879 A.2d at 160. As such, Johnson's claim that he has no liability due to a lack of a signed order from the Sentencing Court fails because the costs being deducted from Johnson's inmate account were statutorily imposed under Section 9721(c.1) of the Sentencing Code, regardless of whether the Sentencing Court issued an order imposing costs. Accordingly, it "appear[ing] with certainty that the law will not permit recovery" on this basis, Respondents' PO to this claim is sustained. *Pa. State Lodge, Fraternal Order of Police*, 909 A.2d at 415-16.

2.    The Department was required to hold an ability-to-pay hearing.

Respondents next demur to Johnson's claim that the Act 84 deductions are improper because, due to a change of circumstances, the Department was **required** to hold an ability-to-pay hearing to continue those deductions. Respondents assert they had no obligation to provide an ability-to-pay hearing as a matter of law and, therefore, Johnson has failed to state a claim on this basis. Johnson relies on

---

[10] While it is unclear from Johnson's averments whether he is challenging the $60 fee to the Crime Victim's Compensation Fund, that fee is statutorily mandated and does not require imposition by a sentencing court. *See* Section 1101 of the Crime Victim's Act, Act of November 24, 1998, P.L. 882, *as amended*, 18 P.S. § 11.1101 (requiring a person convicted of a crime to "pay costs of at least $60" to the Crime Victim's Compensation Fund and stating that "[n]o court order shall be necessary in order for the defendant to incur liability for costs under this section"); *Tate*, 133 A.3d at 355 (holding that deductions from an inmate account to pay into the Crime Victim's Compensation Fund are statutorily authorized).

[11] Thus, this matter is distinguishable from *Rega v. Pennsylvania Department of Corrections* (Pa. Cmwlth., 244 M.D. 2017, filed January 31, 2018), slip op. at 7-8, wherein we held the Department of Corrections could not rely on Section 9721(c.1) as authorizing the deduction of costs without a court order because the inmate in *Rega* was sentenced before that provision was enacted.

certain statements by the Supreme Court in *Bundy I*, which he asserts requires that a new ability-to-pay hearing be held under these circumstances.

Recently, this Court addressed allegations similar to Johnson's, including that the Act 84 deductions were hindering the inmate's access to the courts, in *Bundy v. Wetzel* (Pa. Cmwlth., No. 553 M.D. 2016, filed April 12, 2019), slip op. at 14 *(Bundy II)*, which was on remand from the Supreme Court.[12] In *Bundy II*, we reviewed the decision in *Bundy I* and the underlying case law the Supreme Court cited therein, *Ingram*, *George*, and *Montanez*, for that Court's discussion of whether a change of circumstances would warrant a new ability-to-pay hearing. Observing that the cases cited in *Bundy I* only addressed changes in circumstances prior to the first Act 84 deduction, i.e., between the sentencing hearing and the first Act 84 deduction, we held in *Bundy II* that "due process does not entitle a[n inmate] to be given the means to object to **any** Act 84 deduction that he or she alleges materially changes his or her circumstances." *Bundy II*, slip op. at 14-17 (emphasis in original). We further held the actual language used by the Supreme Court in its holding in *Bundy I*, which suggested that "a material change of circumstances" included "a **threat of additional confinement** or increased conditions of supervision **as a result of unpaid financial obligations**," did not support the conclusion that due process required an inmate be given the ability to object to Act 84 deductions for any change in the inmate's circumstances due to those deductions. *Bundy II*, slip op at 14, 18 (quoting *Bundy I*, 184 A.3d at 559) (emphasis added). Johnson does not allege he will be subjected to additional confinement or increased conditions of supervision due to his failure to pay his

---

[12] *Bundy II*, an unreported opinion, is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

costs.[13] For these reasons, Johnson's averments that he should receive a new ability-to-pay hearing due to the changed circumstances alleged do not state a claim upon which relief can be granted. Accordingly, Respondents' PO to this claim is sustained.

Respondents also demur to Johnson's claim that an ability-to-pay hearing was required by due process. Respondents assert that the proceedings before the Sentencing Court satisfy due process, and it is not required to hold a separate ability-to-pay hearing. *Buck*, 879 A.2d at 160-61. Johnson avers the Sentencing Court here did not provide him due process because it did not consider his ability to pay, as required by Section 9726 of the Sentencing Code; thus, the Department was required to provide him with that process.

Johnson relies on Section 9726 of the Sentencing Code to assert that the Sentencing Court had to consider his finances before ordering the payment of costs; however, that provision applies only to the imposition of **fines**. 42 Pa. C.S. § 9726. Johnson was not sentenced to pay any fines. Costs are governed, as discussed above, by Section 9721(c.1), which **automatically imposes** liability for the **costs**, even if no court order imposing costs exists. 42 Pa. C.S. § 9721(c.1). More importantly, allegations that a Sentencing Court did not inquire into an inmate's "ability to pay could be the basis for relief on direct appeal from [a] sentence or in a post[]conviction [relief] application," not the basis for requiring

---

[13] Although the Supreme Court expressed concern in *Bundy I* about Act 84 deductions interfering with an inmate's ability to pay the costs associated with any Post Conviction Relief Act (PCRA), 42 Pa. C.S. §§ 9541-9546, action an inmate might be litigating, Johnson does not aver that his PCRA actions are hindered by the alleged change in circumstances. A review of the dockets for Johnson's various PCRA actions, the docket numbers of which are included in an attachment to the Initial Petition, reveals that Johnson was granted *in forma pauperis* status and is actively litigating those cases. (Initial Complaint Ex. CS1; Superior Court Docket Nos. 3497 EDA 2017, 450 EDA 2018, 879 EDA 2018.)

16

the Department to hold an ability-to-pay hearing. *Ingram*, 830 A.2d at 1103; *see Tate*, 133 A.3d at 354-55. The inmate in *Ingram* challenged the Act 84 deductions from the inmate's account to pay for court-ordered restitution, fines, and costs. We held that the inmate's challenge to the deduction of funds under Act 84 was "an improper collateral attack on the sentence." *Id.* Accordingly, because it "appear[s] with certainty that the law will not permit recovery" on this basis, Respondents' PO to this claim is sustained. *Pa. State Lodge, Fraternal Order of Police*, 909 A.2d at 415-16.

> 3. Respondents' failure to provide Johnson with notice before beginning the Act 84 deductions in June 2013.

Respondents demur to Johnson's claim based on their failure to provide him with administrative pre-deprivation process before deducting the funds from his account, as required by *Bundy I*, asserting that this claim must be dismissed because they are shielded by qualified immunity. Respondents argue it was not clearly established when they began deducting the costs from Johnson's inmate account in 2013 that the failure to provide pre-deprivation process violated due process principles. In addition to challenging the assertion of this affirmative defense as a demurrer, Johnson, citing various federal and Pennsylvania cases and the Department's Policy, which he claims has been in effect since 2007, regarding collecting inmate debts, asserts that "[t]he clear weight of authority existing at the time the [Department] made the first Act 84 deduction in 2013 clearly established [Johnson's] right to notice and an opportunity to object before the first deduction." (Johnson's Brief (Br.) at 22.)

The doctrine of qualified immunity, as described by the United States Supreme Court, "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

17

constitutional rights for which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise their power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably . . . ." *Id.* In determining whether a law was "clearly established" at the time of its violation, we must consider whether there was "controlling authority in [the] jurisdiction at the time in question which clearly established the rule on which [the petitioner] seek[s] to rely" or "a consensus of cases of persuasive authority such that a reasonable [government official] could not have believed that [the official's] actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

Johnson asserts it was clearly established by June 2013 that he should have received pre-deprivation notice and an opportunity to object prior to the first deduction being made. The first case that definitely addressed the issue, *Montanez*, was not decided until 2014, after the first deduction occurred. This Court, as late as 2016, held that *Montanez* was only instructive and not binding. *Tate*, 133 A.3d at 358 n.11. It was not until 2018 when the Supreme Court decided *Bundy I*, that it was clear that such pre-deprivation process was required for Act 84 deductions as a matter of state law. However, the other federal and Pennsylvania cases Johnson relies upon, which Respondents do not address in their brief, do constitute at least a consensus of persuasive authority suggesting that "a reasonable [government official] could not have believed that [the official's] actions were lawful." *Wilson*, 526 U.S. at 617.

18

In 2002, the United States Court of Appeals for the Third Circuit held in *Higgins v. Beyer*, which involved deductions from an inmate's federal veteran's disability benefits that had been deposited in his inmate account, that the inmate had stated a claim for a violation of his due process rights because the prison officials did not provide him with pre-deprivation notice and hearing prior to deducting the money, in which he had a property interest. 293 F.3d 683, 691, 693-94 (3d Cir. 2002). In 2009, the Third Circuit issued a decision, *Montanez v. Beard*, vacating and remanding the dismissal of a group of inmates' due process claims based on the withdrawal of monies for court-ordered costs and restitution under Act 84 without notice or an opportunity to object. 344 F. App'x 833, 834-35 (3d Cir. 2009). The Court held that it had addressed the issue before in a non-precedential opinion in 2006 and that, as in that prior decision, the inmates "**allege[d] sufficient facts to support a [] claim . . . that [they were] deprived of [their] rights under the Due Process Clause of the Fourteenth Amendment**." *Id.* at 837 (citing *Hale v. Beard*, 168 Fed. App'x. 532 (3d Cir. 2006) (emphasis added)). In 2011, the Third Circuit held, in *Burns v. Department of Corrections*, that the Department's assessment of an inmate's account for medical expenses imposed as a part of the inmate's internal discipline for a fight was an "impairment of a cognizable property interest" and that the inmate was "**entitled to due process** with respect to **any deprivation of money**" from his account. 544 F.3d 279, 281, 286 (3d Cir. 2008) (emphasis added). Notably, in the Third Circuit's 2014 *Montanez* decision, the Court cited its 2009 decision in that case, *Hale*, *Burns*, *Higgins*, and *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997), and held that "[t]aken together, these cases **make clear** that when pre-deprivation process could

be effective in preventing errors, **that process is required**." *Montanez*, 773 F.3d at 484 (emphasis added).

Johnson also asserts there are decisions from this Court, filed before the deductions from his account began in 2013, which similarly provide that where money is taken from an inmate's account, due process requires the inmate be given reasonable notice and an opportunity to be heard prior to the deduction. *Holloway*, 671 A.2d at 1181-82. Johnson notes that *Holloway* has been the law since 1996 and had been cited in numerous published cases prior to 2013. In addition, Johnson cites the Department's Policy, Section 3 of DC-ADM 005, which sets forth the procedures for the collection of inmate debts. Johnson asserts the Policy's requirement that an inmate is entitled to a "Notification of Deductions Memo," has been in effect since 2007, and that requirement was recognized in the response he received to his grievance, which stated that there was no "explanation as to what happened to the original notice" in 2013. (Johnson's Br. at 26; Initial Petition, Ex. GR.) While the Department's administrative policies do not create rights for inmates, *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017), and Respondents state in their brief that Section 3 was changed "to meet the requirements outlined in" *Montanez*, (Respondents' Br. at 12 n.2), the response to Johnson's grievance, which upheld the lack of notice part of the grievance, suggests some kind of pre-deduction notice was the norm, even in 2013.

Reviewing these cases and the allegations, we cannot agree with Respondents that it is clear on the face of the pleadings that they would be entitled to qualified immunity to allow this defense to be raised as a preliminary objection or that Johnson has not stated a claim upon which relief can be granted based on

20

their having immunity. Therefore, Johnson's PO challenging the demurrer on that basis is sustained, and Respondents' PO is stricken.

In sum, following our review of the POs challenging the legal sufficiency of Johnson's various Act 84 claims, only one claim remains – that Respondents violated Johnson's due process rights by not providing him with administrative pre-deprivation process prior to the first deduction from his inmate account in 2013. However, Respondents have asserted one more demurrer, challenging the sufficiency of Johnson's Act 84 claims based on the expiration of the applicable statute of limitations. We now turn to that PO.

4.    The remaining Act 84 claim and the statute of limitations.

Respondents assert it is clear from the pleadings that Johnson's Act 84 claim is barred by the statute of limitations because it was filed more than two years after the first Act 84 deduction in June 2013. It is now settled that a claim based on the Department's deductions from an inmate account pursuant to Act 84 is subject to a two-year statute of limitations, and an inmate's cause of action accrues as of the date of the first Act 84 deduction. *Morgalo*, 134 A.3d at 1149 & n.14. Generally, "once the prescribed statutory period has expired, the complaining party is barred from bringing suit." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). Here, Johnson averred that the first Act 84 deduction from his inmate account was in June **2013** of which he was aware in July 2013. (Amended Petition ¶ 12.) This is the date his Act 84 claim accrued. *Morgalo*, 134 A.3d at 1149. Because Johnson did not file the current action until July of **2018**, more than five years after the first deduction occurred, it is clear from the face of his pleadings that his claims would be barred by the two-year statute of limitations **unless** the statute of limitations was tolled for some reason.

21

Johnson alleges that it is not clear on the face of the pleading that he is not entitled to relief because when he questioned the Act 84 deductions in July 2013, Respondents, via Counselor, fraudulently concealed the illegality of the Act 84 deductions by telling him that the deductions were lawful. (Initial Petition ¶¶ 13, 60-61 (citing *Fine v. Checcio*, 870 A.2d 850 (Pa. 2005)); Initial Petition Ex. FC; Amended Petition ¶ 13.) Through these averments, it appears Johnson is asserting the statute of limitations was tolled based on the doctrine of fraudulent concealment. Respondents respond that, to the extent Counselor said this to Johnson, "one cannot dispute the response" because "[t]he deductions are lawful and the only way to get them to stop is to pay the costs in full." (Respondents' Br. at 8.) In other words, Respondents contend that Counselor's response was accurate.

The doctrine of fraudulent concealment tolls the running of the statute of limitations and is based on estoppel. *Fine*, 870 A.2d at 860. The doctrine of fraudulent concealment "provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, [the defendant] causes the plaintiff to relax [the plaintiff's] vigilance or deviate from [the plaintiff's] right of inquiry into the facts." *Id.* "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes unintentional deception." *Id.* In order for this doctrine "to be applicable, '[a] defendant must have committed some affirmative independent act of concealment upon which [a] plaintiff[] **justifiably relied**.'" *Krapf v. St. Luke's Hospital*, 4 A.3d 642, 650 (Pa. Super. 2010) (emphasis added) (citation omitted)

(alterations in original).[14]  "**General assurances** that a situation . . . is normal **do not rise to the level of fraudulent concealment** where the plaintiff's own common sense should inform [the plaintiff] that [the plaintiff] has been injured." *E.J.M. v. Archdiocese of Phila.*, 622 A.2d 1388, 1395 (Pa. Super. 1995) (emphasis added).  It is the plaintiff's burden to prove the application of this doctrine "by clear, precise, and convincing evidence."  *Fine*, 870 A.2d at 860.  "While it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made."  *Id.*  "[A] statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause."  *Id.*

Here, we are not required to determine whether Counselor made the alleged statements to Johnson because that Counselor's response to Johnson's inquiry is attached to the Initial Petition as Exhibit FC.  The question before us, then, is whether it is clear that, notwithstanding Counselor's statement, Johnson's claims are time barred.  *Id.*  This necessitates an inquiry into whether Johnson was "reasonably diligent in informing himself of the facts upon which his recovery may be based."  *Id.* at 861.  The "reasonable diligence" test evaluates a party's actions "to determine whether [the party] exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others."  *Id.* at 858.  Ordinarily, this involves a question of fact for the jury, but where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of

---

[14] Although not binding on this Court, Superior Court decisions "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

reasonable diligence of [the party's] injury and its cause," the question can be resolved as a matter of law by a court. *Id.* at 858-59.

In the Initial Petition and Amended Petition, Johnson admits to learning of the Act 84 deductions in July 2013. While Counselor advised Johnson that the deductions were lawful, Counselor's statement could be viewed as a general assurance that the deductions were normal and would not rise to fraudulent concealment where common sense would inform Johnson that he was injured. *E.J.M.*, 622 A.2d at 1395. Johnson does not allege in the Initial Petition or Amended Petition how or why Counselor's statement precluded him from exercising common sense or inquiring into the accuracy of Counselor's statement. Johnson states only that he could rely on Counselor's statement and was not required to investigate the accuracy of the statement. (Initial Petition ¶ 61.) We conclude that "reasonable minds would not differ" that society would expect an individual in Johnson's situation to exhibit more diligence in determining the accuracy of a statement that such deductions were lawful in order to protect the individual's interests. *Fine*, 870 A.2d at 858-60. And, as reflected in his Answer to Respondents' POs, which this Court may consider, *see* Pennsylvania Rule of Civil Procedure 1017(a)(4), Pa.R.C.P. No. 1017(a)(4) (indicating that a preliminary objection and response thereto are pleadings in an action), Johnson was capable of finding, and did find, legal precedent and a Department Policy that he avers indicate that the Department's failure to provide him with a pre-deprivation process to challenge the Act 84 deductions was not "lawful." (Johnson's POs ¶¶ 37-52, 55-57; Answer to Respondents' POs ¶¶ 26-41, 44-46.) Accordingly, absent an explanation as to why Johnson's reliance on Counselor's statement was justifiable or why that statement was more than a general assurance that the

24

situation was normal, Johnson was not "reasonably diligent in informing himself of the facts upon which his recovery may be based." *Fine*, 870 A.2d at 861. Therefore, it would be clear from the face of the pleadings that the statute of limitations was not tolled by Counselor's statement.

Johnson does aver in his Answer to Respondents' POs that Counselor "was in a position of trust." (Answer to Respondents' POs ¶¶ 21-22.) He alleges that, as a result of Counselor's statement, he "relax[ed] his vigilance and deviate[d] from his right of inquiry into the facts." (*Id.* ¶ 24.) In support, Johnson cites *Acker v. Palena*, 393 A.2d 1230, 1234 (Pa. Super. 1978), a medical malpractice matter in which the patient's reliance upon a physician's assurances was held to toll the statute of limitations because of the position of trust the physician held. Johnson does not cite any legal authority to support the proposition that his relationship with Counselor is similar to the relationship a physician has with a patient such that his reliance would be justifiable. Such relationships may arise as a matter of law, but may also arise from the specific facts and circumstances of a case. *Basile v. H & R Block, Inc.*, 777 A.2d 95, 102 (Pa. Super. 2001). Johnson does not aver any specific facts or circumstances that support his allegation that Counselor "was in a position of trust." (Answer to Respondents' POs ¶¶ 21-22.) Because there are insufficient facts averred to support Johnson's bald assertion regarding Counselor's position of trust, or why his reliance on Counselor's statement was justifiable, it is clear from the face of the pleadings that the statute of limitations was not tolled by Counselor's statement. Accordingly, we overrule Johnson's PO, sustain Respondents' PO, and, because the only remaining claim is time barred, the Amended Petition is dismissed with prejudice.

## III. Conclusion

For the foregoing reasons, we sustain Respondents' PO asserting that Johnson has failed to state a negligence claim based on their having immunity, overrule Johnson's corresponding PO, and dismiss the negligence claim with prejudice. We dismiss as moot Respondents' PO to the negligence claim based on the expiration of the statute of limitations and Johnson's corresponding PO. We sustain Respondents' POs to Johnson's Act 84 claims, exclusive of the due process claim based on the lack of an administrative pre-deprivation process, and dismiss those claims with prejudice. We sustain Johnson's PO challenging Respondents' asserting qualified immunity to his due process claim premised on the lack of administrative pre-deprivation process as a PO and strike Respondents' PO in that regard. However, we sustain Respondents' PO to that remaining Act 84 claim based on the expiration of the statute of limitations, overrule Johnson's corresponding PO, and dismiss that claim with prejudice. As there are no claims remaining, we dismiss Johnson's Amended Petition with prejudice.

_____
**RENÉE COHN JUBELIRER,** Judge

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aquil Johnson,                            :
                       Petitioner         :
                                    :
               v.                   :    No. 497 M.D. 2018
                                    :
John Wetzel, Secretary PA. D.O.C.,   :
Mark Garman, Super., S.C.I. Rockview  :
et al., Officers, Agents, Servants,      :
Employees and Attorneys,            :
                     Respondents   :

## O R D E R

**NOW**, June 3, 2019, the preliminary objections (POs) filed by John Wetzel, Secretary PA. D.O.C., Mark Garman, Super., S.C.I. Rockview, et al., Officers, Agents, Servants, Employees and Attorneys (together, Respondents) to the Amended Petition for Review (Amended Petition) filed by Aquil Johnson, and the corresponding POs filed by Johnson are resolved as follows:

- Respondents' PO asserting that Johnson has failed to state a negligence claim based on their having sovereign immunity is **SUSTAINED**, Johnson's corresponding PO is **OVERRULED**, and the negligence claim is **DISMISSED WITH PREJUDICE**;

- Respondents' PO to the negligence claim based on the expiration of the statute of limitations and Johnson's corresponding PO are **DISMISSED AS MOOT**;

- Respondents' POs to Johnson's Act 84 claims, exclusive of the due process claim based on the lack of an administrative pre-deprivation process, is **SUSTAINED**, and those claims are **DISMISSED WITH PREJUDICE**;

- Johnson's PO challenging Respondents' asserting the affirmative defense of qualified immunity to his Act 84, 42 Pa. C.S. § 9728(b)(5), claim premised on the lack of administrative pre-deprivation process as a PO is **SUSTAINED**, and Respondents' PO in that regard is **STRICKEN**;

- Respondents' PO to the remaining Act 84 claim based on the expiration of the statute of limitations is **SUSTAINED**, Johnson's corresponding PO is **OVERRULED**, and that claim is **DISMISSED WITH PREJUDICE**.

As there are no claims remaining, Johnson's Amended Petition in its entirety is **DISMISSED WITH PREJUDICE**.

_____
**RENÉE COHN JUBELIRER,** Judge